248 So.2d 878 (1970)
J. WILTON JONES COMPANY, Inc. and Rene G. Delacroix
v.
LIBERTY MUTUAL INSURANCE COMPANY.
No. 3999.
Court of Appeal of Louisiana, Fourth Circuit.
July 6, 1970.
Rehearing Denied May 10, 1971.
Writ Refused June 21, 1971.
*879 Remy F. Gross, II, La Place, for J. Wilton Jones Co., Inc., and Rene G. Delacroix, plaintiffs-appellants.
*880 Drury, Lozes, Young & Curry, Felicien P. Lozes, New Orleans, for The Employers' Liability Assurance Corp., Ltd., intervenor-appellant.
Jones, Walker Waechter, Poitevent, Carrere & Denegre, John V. Baus, and James R. Murrell, III, New Orleans, for Liberty Mutual Insurance Co., defendant-appellee.
Before REDMANN, LeSUEUR and DOMENGEAUX, JJ.
LeSUEUR, Judge.
Rene G. Delacroix, one of the two original plaintiffs in this automobile-personal injury action, died on October 9, 1965, some eighteen months after suit was filed. The case had yet to be heard and, on February 23, 1966, Ella Moore Delacroix, Mr. Delacroix's widow, filed a "supplemental and amended petition" as "administratrix of decedent's succession" in which she alleged that, as administratrix, she was entitled to be placed in her late husband's stead as plaintiff and prayed for judgment in favor of the estate. On November 22, 1966 (more than a year after her husband's death) she filed a "second amended and supplemental petition" asking for both survival and wrongful death benefits. The defense lodged exceptions founded upon the peremptory provisions of LSA-C.C. Art. 2315.
At trial, the case was presented by joint stipulation of fact and dismissed on the exceptions. The stipulation has narrowed the issues before this court to two: (1) whether a timely substitution with reference to survivorship benefits was made (the wrongful death claim being withdrawn); and (2), if so, what amount of damages will adequately compensate Mrs. Delacroix.
In our view, the imposition of peremption is predicated on two errors. First, such an approach inextricably confuses rights to the survival of an action already filed (a right exercised) with a nonexercised right of action for wrongful death. Second, it overlooks statutory amendments adopted with the Code of Civil Procedure in 1960.

THE EFFECT OF DEATH UPON A CAUSE OF ACTION.
The defendant's view of the abatement of an action which was filed timely is grounded on a long series of decisions interpreting rights granted under Art. 2315 as personal. If this view was once correct, it can most certainly no longer prevail. Both Art. 2315 and the modes of Louisiana procedure concerning abatement and substitution were radically altered in 1960. Specifically, the following provisions were adopted:
1. Art. 428 of the Code of Civil Procedure which provides, unequivocally, that an action once commenced does not abate upon the death of a party;
2. Art. 801 of the Code of Civil Procedure which provides specifically that the succession representative may substitute for any deceased party in a civil action. It is important to note that no time limit is provided for in this article;
3. Art. 2315 of the Civil Code was amended to provide that "a right [of action] to recover damages under the provisions of this paragraph is a property right."
This final change bears close scrutiny. As Professor McMahon observes by explanatory note, these rights are not only heritable, but heritable in two distinct categories. If suit has not been filed, they the right to sue is heritable subject to the limitations of peremption. But, if suit has been filed, then the action itself is inherited. As such an action has already been filed and all served parties given fair notice, there is no question of either peremption or prescription. The question is one of abatement. LSA-C.C.P. Art. 428 specifically excludes that possibility.
The means for continuing the still-living action is found in the substitution provisions *881 of Art. 801. No time limit is set out, and for good reason. The Code of Civil Procedure already provides a 5-year time limit for abatement. Substitution is subject to this delay.
These principles seem to have been accepted at the time the statutory changes were made. Judge McBride, for example, in 1962, denied substitution for survivorship past the one year delay on the specific ground that the cause of action before him arose before 1960. Maher v. Schlosser, La.App., 144 So.2d 706 (4th Cir. 1962). The thrust of his thinking seems clear.
In this connection, it is significant to note that with the principal exceptions of Davis v. State Farm Mutual Insurance Company, La.App., 208 So.2d 412 (4th Cir. 1968), Succession of Roux v. Guidry, La. App., 182 So.2d 109 (4th Cir. 1966) (both of which deal explicitly with wrongful death rather than survival benefits), and Marvin v. Toye Brothers Yellow Cab Company, La.App., 214 So.2d 196 (4th Cir. 1968), the defense relies chiefly upon decisions in which the causes of action predated the relevant legislative acts. Under these circumstances, an examination of the statutes passed or amended in 1960 and 1962 (LSA-C.C. Art. 2315, and LSA-C.C. P. Arts. 421, 426, 428 and 801) seems in order.

THE SCOPE OF THE ONE YEAR DELAY PROVIDED BY ART. 2315.
LSA-C.C. Art. 2315, as amended by Act 30 of 1960, Sec. 1, provides:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

"The right to recover damages to property caused by an offense or quasi-offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.

"The right to recover all other damages caused by an offense or quasi-offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not." (Emphasis added.)
This article, by its express language, deals with a right of action, twice using this specific phrase. The one year delay expressly refers to the time in which a right of action must be exercised. The importance of this cannot be too strongly emphasized. As it is pointed out in the comments to LSA-C.C.P. Art. 421, defining the word "action":
"The word `action' has a double meaning * * * meaning both the `instituted action' and the `right to institute the action.' This double meaning has proved most unfortunate whenever the word `action' is employed * * *. To avoid this difficulty, throughout this Code `action' has been given only the meaning ascribed to it in the definition of the above article  `instituted action.' Whenever the `right to institute the action,' is meant express language to this effect clearly indicating this meaning is employed. * * * (Emphasis added.)
*882 The Louisiana Law Institute also drafted the amendment to Art. 2315. The consistent and purposeful use of terms suggests, at least on a preliminary basis, that it is only when a right of action rather than an action itself is inherited that the one year peremptive delay applies.
This, however, is more than a logical conclusion; it is a necessary one. An instituted action is property. In its essential nature it is no different in this respect than a brick. LSA-C.C.P. Art. 426 specifically so provides:
"An action to enforce an obligation is the property of the obligee which on his death is transmitted with his estate to his heirs, * * *." (Emphasis added.)
LSA-C.C.P. Art. 428 makes it plain that the inherited action is a viable, living one, providing that it does not abate on the death of a party. The comments to the Article are to the point:
"* * * the line of demarcation is the institution of suit. Cf. Art. 421, supra. If the plaintiff has elected to enforce a right of action by instituting suit thereon, then his heirs, or his survivors under the amended Art. 2315 of the Civil Code, have the right to continue its prosecution, if the plaintiff dies." (Emphasis added.)
Here, the legislature deals with the "right to continue." So long as the action is not abated, this is an absolute right, not bound by the restrictions placed upon a "right of action."
Within this framework, the entire schema of Art. 2315 seems clear. It deals with "rights of action" because the inheritance of an instituted action is governed by the provisions of LSA-C.C.P. Arts. 421 and 426, and the succession articles of the Civil Code. It makes the right property because the action itself is so treated by Art. 426. It deals in its final sentence with the survivor of a survivor because an immediate survivor, where suit is filed, already has fixed rights under Arts. 426 and 428. In short, it seems that the Institute, in its use of language, said precisely what it intended.
Confusion is generated only because, in some cases, the vehicle for enforcing the heirs' new right of action (wrongful death as in Roux) may be to substitute themselves into and amend the deceased's action which was for damages only.
If the heirs receive a right of action under Art. 2315, then in order to exercise it by substitution and amendment, they must accept the limits imposed by Art. 2315 and act within a year. But, if the heirs inherit an instituted action as defined in Art. 421, they are bound only by the restrictions in Arts. 426 and 428, together with the substitution provisions of LSA-C.C.P. Arts. 801 through 804.
The legislature, itself, has taken this distinction into consideration by amending Art. 801 in 1962 to provide for different party plaintiffs in each situation. If the heirs are the beneficiaries under Art. 2315 they so proceed. But, if the heirs are different from the beneficiaries, then the succession representative is the proper party plaintiff (see McMahon's comments at 23 La.Law Rev. 27). These heirs who differ from beneficiaries must take their procedural rights from LSA-C.C.P. Arts. 426 and 428.
In this case, the widow seeks to continue an instituted action. Her rights, then, are determined by the source of those rights, LSA-C.C.P. Arts. 426 and 428, coupled with Art. 801. The delay of one year does not govern because she asserts no new "right of action" under LSA-C.C. Art. 2315. Thus, pursuant to LSA-C.C.P. Art. 801, substitution eighteen months past the death of the original plaintiff is clearly allowed.

*883 SUBSTITUTION WAS PROPER UNDER ARTS. 801-804 OF THE CODE OF CIVIL PROCEDURE.
LSA-C.C.P. Art. 801, which provides for substitution, contains no time limit. It creates an absolute right so long as the cause of action has not been extinguished and the action has not been abated. Neither caveat is applicable to the case at bar.
The cause of action is not extinguished because it has been exercised. If there is a peremption in LSA-C.C. Art. 2315, it is, by the terms of the article itself, applicable only to a right of action, not an instituted suit, as was discussed above. Inasmuch as five years have not passed, the action has not abated.

THE HISTORICAL CONTEXT.
The central question is rooted in a century-long struggle between the courts and legislature which continued until 1960 when the governing law was adopted. On no less than three occasions, decisions consistent with the defendant's position were handed down. On each of these occasions, the legislature amended the basic statutes. The needs of the public, the bench, and the bar demand that this struggle be ended. The legislature has acted once more. The amendment to LSA-C.C. Art. 2315 and the adoption of the cited articles of the Code of Civil Procedure are, in a sense, a legislative package intended to abrogate the specific case law urged by the defendant. It remains only for the courts to implement this intent.
The relationship between these statutory amendments and the problem now before this court is clear. Professor McMahon, at 21 La.Law Rev. 1, discussed these questions at length, showing clearly that the matter of abatement of actions was clearly tied in with the problems posed by Art. 2315. Thus, says Professor McMahon, "after months of groping for effective solutions," it was decided "that no effective solutions were possible without an amendment of Art. 2315 of the Civil Code." At p. 26 he also discusses the four changes effected by the amendment to Art. 2315. The fourth numbered change is pertinent.
"(4) * * * the transmitted and individual rights of a designated beneficiary are recognized as property rights which, on his death either before judgment or even before the filing of suit, are inherited by the heirs of this beneficiary. * * *" (Emphasis added.)
The emphasized language unequivocally suggests that the last sentence of Art. 2315, third paragraph, quoted herein, means that: all rights for personal injury and death are made property rights. McMahon's language, "the transmitted and individual rights of a designated beneficiary are recognized as property rights," seems to embrace all such rights. It seems wholly unwarranted to twist the language of the amended article so as to imply that there is a sort of judicial interregnum situation whereby the surviving rights for personal injuries were not property rights of the injured party but that they became such in the hands of the beneficiary.
The answer to this is that once suit has been filed, the action itself is a property right which is also heritable. As a fact in point, Art. 2315 itself, terms the limitation as one upon "this right of action." This thought, however, has already been developed.
It seems clear, therefore, as Professor McMahon points out, that when the framers of the Code of Civil Procedure set out to do what they wanted to do quoad the nonabatement of actions, they felt it necessary to amend Art. 2315 specifically to prevent judicial interference with the intent to make instituted actions nonabateable.
In Gabriel v. United Theatres, 221 La. 219, 59 So.2d 127, 1952, for example, the courts had held the former nonabatement statute repealed by implication when a former amendment to Art. 2315 was passed. By amending Art. 2315, itself, so as to make *884 the rights created thereunder property rights, the legislature intended to bring the abatement-nonabatement struggle to a close. As Professor McMahon concludes:
"With these changes the remaining problems of abatement of actions are solved simply through a basic article (Article 428) providing that no actions abate on the death of a party, except those to enforce a right or obligation strictly personal."
In essence, the Gabriel decision is conclusive for it makes at least one thought crystal clear: the line of decisions favoring the arguments for peremption is incompatible with the legislative intent inherent in the nonabatement and substitution statutes. We are constrained to abide by that intent and we thus hold that Mrs. Delacroix's substitution eighteen months after the death of her husband was proper.

MARVIN V. TOYE BROTHERS YELLOW CAB COMPANY.
We are aware that our conclusion is opposed in both concept and ruling to this circuit's earlier decision in Marvin v. Toye Brothers Yellow Cab Company, supra. Our reading of that decision, however, convinces us that the distinction between an instituted action and a right of action was not adequately presented to the Marvin court and our view of the significance of that distinction makes it impossible to follow the Marvin holding.

DAMAGES.
The joint stipulation provides that in the event judgment is rendered for plaintiff (liability was conceded) it shall be limited to the sum of $14,283.00 (lost wages), plus a sum for the personal injuries, pain and suffering borne by the decedent from July 3, 1963, the date of the accident, until October 9, 1965, the date of his death. Pursuant to the stipulation, no other claims are to be considered.
Mr. Delacroix's injuries were most certainly severe and included an open sucking lung puncture and fractured ribs. Fragments of the fractured rib cut arteries within the chest and there was a contusion of the left lung. His face was cut which led to scarring.
He was rushed to the emergency room at Charity Hospital in New Orleans where a tube was inserted in the chest for drainage and then into surgery where the wounds were closed. On July 10, 1963, he was transferred to Touro Infirmary.
Inasmuch as an electrocardiographic abnormality had been noted at Charity, follow-up care was instituted, and continued past his discharge from the hospital on July 25, 1963.
The heart condition was diagnosed as a complete left bundle branch block, and in view of his negative cardiac history and in view of the evidence of Dr. G. E. Burch, a cardiac specialist, it seems reasonably clear that the condition was caused by the trauma. He was enfeebled by this problem and required to restrict all activities and to spend a great deal of time in bed. To some extent, these disabilities remained with him until his death and account for the lost wages covered by the stipulation.
All things considered, we feel that an award of $15,000.00 will provide adequate compensation for the injuries and pain and suffering that extended from the date of the accident until the date of his death. This, together with the $14,283.00 sum, which represents lost earnings, will bring the total judgment to $29,283.00.
Accordingly, the judgment appealed is reversed, and judgment is hereby entered in favor of Ella Moore Delacroix and against the defendant in the sum of $29,283.00, together with legal interest and costs in both courts.
Reversed and rendered.

*885 ON REHEARING
Before REGAN, SAMUEL, CHASEZ, REDMANN, LEMMON, GULOTTA, TAYLOR, BARNETTE and LeSUEUR, JJ.
REDMANN, Judge.
Rehearing was granted, and was had before the whole court (as of December 16, 1970), because our original opinion by one panel of judges of the court effectively overruled a decision made by another panel two years earlier. (Marvin v. Toye Bros. Yellow Cab Co., La.App. 1968, 214 So.2d 196).
The facts are sufficiently stated in our original opinion.
The court remains divided in its views on the law. A majority believes that the surviving widow, as such, is entitled to the judgment for her husband's damages as rendered on original hearing. Yet that majority is not unanimous in its reasoning.
This opinion presents the view that, when a tort victim has already instituted an action for his personal injury (1) the instituted action is not abated by his death, (2) the instituted action becomes, on the death of the victim, the property of the survivors specified by C.C. art. 2315; (3) the survivors need not substitute themselves as parties in the victim's instituted action within the one year period art. 2315 provides their "right of action"  "right to recover" survives.

NON-ABATEMENT
Art. 2315 as last amended in 1960 provides, in part, as to non-property damage:
"The right to recover all other damages caused by an offense or quasi-offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; * * *. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not."
An abatement problem is presented by the wording "the right to recover * * * shall survive for a period of one year * * *", which, if the sole source of survivors' rights, would appear to be a peremptive period during which alone the "right to recover" might be exercised. Even so, the only reasonable explanation of the one year period is that it is one in which suit must be instituted: it surely does not mean that the "right to recover" expires in one year even if suit by the survivor was brought within the year but judgment was not yet obtained.
The two later references to "this right of action" surviving are indicative of the intent that it is only a right of action, i. e., a right to bring suit, which is limited by the one year provision. If suit is brought within the year, the "right to recover" will endure, even through several years, until judgment is obtained enforcing the "right to recover".
In our opinion, regardless of whether suit was brought by the tort victim or the survivor, if suit has been instituted art. 2315 does not destroy the "right to recover" merely because of the passage of one year from the victim's death. The history of art. 2315 shows that all amendments to it have been intended to grant rights, not destroy them.

History
Prefatorily we note that in this historical review there must be kept in mind the distinction between survival of actions (for *886 the tort victim's own damages) and wrongful death actions (for the damages that are caused to others by the tort victim's death). The latter action never involves a transmission of right from the original tort victim. Failure to consider this distinction has on occasion created confusion.
Prior to its amendment by Act 223 of 1855, C.C. (1825) art. 2294 [source of C.C. (1870) art. 2315] contained neither survivorship nor wrongful death provisions. It read simply "Every act whatever of man, that causes damages to another, obliges him by whose fault it happened, to repair it." Hubgh v. New Orleans & C.R. Co., 6 La.Ann. 495 (1850), held, although only with an alternative holding of contributory negligence, that a wrongful death action for the survivors' own damages was not within the broad scope of the then codal article. Hubgh is strongly criticized in Voss, The Recovery of Damages for Wrongful Death at Common Law, at Civil Law, and in Louisiana, 6 Tulane L.Rev. 201, 218-220 (1932).
The question whether a tort victim's own action, already instituted, died with the plaintiff was presented in Vincent v. Sharp, 9 La.Ann. 463 (1854). Pending defendant's appeal from a judgment for plaintiff, plaintiff died and the curator of his estate was made party. The Supreme Court's brief opinion, maintaining the curator's substitution and affirming, reasoned:
"It is insisted, by the counsel of appellant, that a personal action for damages for a tort, expires in the person who instituted it. We are not aware of any such rule in our jurisprudence. See Code of Practice [1825], articles 1, 21, 22, 113, 120. Also Civil Code [1825], articles 867, 1994, 2271, 2294."
Thus, even before the 1855 amendment of C.C. (1825) art. 2294 to provide survivorship of a decedent's right of action, there was a case holding an instituted action which had already resulted in favorable trial court judgment, even though still on appeal, did not abate on plaintiff's death. The reasoning of the court, judging from the authorities cited, was apparently that the action did not abate after answer filed, C.P. art. 21, but was transmitted to the heirs, C.P. art. 22 and C.C. (1825) art. 867 (now C.C. art. 471). Reference by the court to C.C. (1825) art. 1994 (now verbatim C.C. art. 1999) apparently rejected any theory that the obligation to repair tort damage was strictly personal to the obligee and therefore unenforceable by his heirs: "Every obligation shall be deemed to be heritable as to both parties, unless the contrary be specially expressed, or necessarily implied from the nature of the contract."
However, C.P. (1825) art. 21 provided non-abatement only of instituted actions where answer had been filed. Thus that article offered no support to a theory of survival of an unanswered action or of a mere right of action. But the other authorities cited would support the conclusion that in the latter case the heirs could bring an action. And to those authorities might be added C.C. (1825) art. 939 (now, verbatim, C.C. art. 945), which declares one effect of the heir's immediate seizin is "to authorize the heir to institute all the actions * * * which the deceased had the right to institute, and to prosecute those already commenced. * * *"
Furthermore, while Hubgh said that Roman law ordinarily allowed no wrongful death action, it appears that survivorship of quasi-delict actions in favor of the victim's heirs was the rule in the pre-Louisiana Roman law. Thus Radin, in Handbook of Roman Law, § 53, p. 160, observes:
"* * * In the case of the quasi delict, as in delictual actions generally, a right of action, once accrued, survived in favor of the injured person's heirs, but could not be brought against the heirs of the wrongdoer. * * *"
See also Voss, loc. cit., at 6 Tulane L.Rev. 212-13; also Comment, 15 La.L.Rev. 722, 724 (1955), citing Digest 47.1.1 and Institutes 4.12. pr.
*887 Accordingly, the 1855 amendment of C.C. (1825) art. 2294 to provide survival of the decedent's right of action might have been thought surplusage (except insofar as it specified the beneficiaries) if intended as later construed in Earhart v. New Orleans & C.R. Co., 17 La.Ann. 243 (1865). However, in Earhart, at p. 245, the Supreme Court said that before the 1855 amendment "it was considered as settled that actions like the one at bar [a wrongful death action] were purely personal, and not transmissible with the succession of the sufferer, but died with him." Cited in support were two earlier wrongful death cases; Hubgh, supra; and Hermann v. New Orleans & C.R. Co., 11 La.Ann. 5 (1856; sic). Earhart did not mention Vincent.
In any event, as a minimum it must be said that the 1855 amendment did change the persons in whose favor a right of tort action survived, thus taking the right of action out of the decedent's succession or at least providing a unique 100% forced heirship rule for such a right of action.
Art. 2294 of the 1825 Code, with the 1855 amendment, became art. 2315 of the 1870 Revised Civil Code. An amendment by Act 71 of 1884 added the first provision for recovery by the designated survivors of their own damages caused by the wrongful death. Other amendments, not necessary to relate for our purposes, followed.
From 1855 until the 1960 amendment, the language of the tort article relating to survivorship of the decedent's own claim for damages was in terms of survivorship of "the right of this action."
Except for the pre-1855 case of Vincent v. Sharp, supra, maintaining substitution of the decedent's succession representative after decedent had personally litigated to a favorable trial court judgment, we find not a single decision prior to 1898 treating the effect of death on a tort action already instituted.
In 1898 in Chivers v. Roger, 50 La.Ann. 57, 23 So. 100, the tort victim's father had sued "for the recovery of the damages his son had suffered," and not for the father's own damages resulting from the wrongful death. The father died after the case was tried but before judgment in the trial court. The father's "heirs" were "cited, and made parties plaintiff to the suit." These heirs were not otherwise identified, but that they were not survivors of the son, the tort victim, designated by art. 2315, may be inferred from the contention that allowing them to continue the father's survival-of-action-suit "would be, in effect, to enlarge the provisions of Rev.Civ.Code, art. 2315, and the statute of 1884 amending it, by conferring same upon a class of persons that is not included in either." 23 So. at 101; emphasis added.
Apparently the ratio of the Chivers decision was that a right of action for the tort victim's own damages only survives insofar as art. 2315 provides:
"* * * The Code provides that the right of this action for personal injuries survives the death of the person injured in favor of certain designated individuals, as beneficiaries in the order named; and, in default of one or more of them, by death or otherwise, the next one in order acquires that right of action in his or her favor. If, then, one of the beneficiaries first enumerated should institute a suit, and cause it to be put at issue, and thereafter die, and his beneficiary heirs should, on that account, inherit the pending action, the result would necessarily be to confer the benefit of the statute on persons not contemplated therein, and defeat the claim of the one who would otherwise have succeeded the deceased thereto. * * *" 23 So. at 103.
Thus Chivers might be interpreted as holding, as it says it holds, "that the action [of the art. 2315 beneficiary for the victim's damages] has abated because the right of action perished with the death of the beneficiary * * *." The right of action for the victim's damages is expressly made *888 to survive in favor of the beneficiaries designated by art. 2315; Chivers holds only that it does not survive the beneficiary's death in favor of the beneficiary's heirs.
Chivers merely reported a contention that "under the well-settled jurisprudence of this court * * * an action for the recovery of damages for personal injuries sustained is a purely personal one, and does not survive the death of the beneficiary * * *." 23 So. at 102. In respect to the action for the tort victim's damages, this contention is in error in speaking of "well-settled jurisprudence." It is obviously the result of non-recognition of the difference between the claim for the victim's damages, and the claim for others' damages, i. e., the difference between survivorship of actions and the wrongful death action. Every earlier case (except Vincent v. Sharp, supra) was a wrongful death case, holding only that no action lies for the damages caused to another by the wrongful death. Indeed the first of those cases, Hubgh, supra, points out, at 6 La. Ann. 510, "it is understood that the present action is founded upon the direct injury to themselves by the death of Hubgh, from the causes alleged in the petition; and is not attempted to be maintained as a right transmitted to them through the deceased." (Emphasis added.)
But, while Chivers reported this "well-settled jurisprudence" (which seems to be non-existent) merely as a contention, the 1898 court itself states such a view in Huberwald v. Orleans R. Co., 50 La.Ann. 477, 23 So. 474, 475, where children, "averring that the injury sustained by their father, of which he died, survived in their mother," brought suit as the mother's heirs. The court stated "The right of action arising from a quasi offense against one's person has always been considered and treated by this court as a personal action, not heritable without legislative sanction." The only authorities cited were Hubgh, supra, and Hermann, supra, both wrongful death cases, not involving survivorship of actions.
Still the holding is only that the right of action for a tort victim's damages, which survives in favor of an art. 2315 beneficiary (whether an action has already been instituted by the beneficiary, as in Chivers, or not, as in Huberwald), does not survive in favor of the beneficiary's heirs; both cases suggest the action or right of action would survive in favor of the next designated survivors of the victim.
This latter suggestion was rejected (with reference not to Chivers' language but only to Huberwald's, which was inappropriate to its facts) in Kerner v. Trans-Mississippi Terminal R. Co., 158 La. 853, 104 So. 740 (1925) (reversing the Court of Appeal, 1 La.App. 129). There the victim's mother brought a suit (not specified whether survivorship or wrongful death) but herself died within a year of the tort. The victim's siblings then sued for both the victim's damages and their own damages, and their claim was dismissed on exceptions. The first ranking class of survivors alone has the right of action for the victim's damage, and is the only class who could "also" claim its own damages for the wrongful death.
(It might be noted at this point that the death of the tort victim need not result from the tort in order for the survivorship provisions of art. 2315 to apply, whether the victim had only an unexercised right of action, Walton v. Booth, 1882, 34 La.Ann. 913; or had already instituted an action, Payne v. Georgetown Lbr. Co., 1906, 117 La. 983, 42 So. 475; Gallaher v. Ricketts, La.App. 1939, 187 So. 351. In Payne, the mother claimed full, exclusive right as the art. 2315 survivor, or alternatively one fourth by inheritance if the victim's siblings were held to have inherited three fourths. The court concluded the mother's right was exclusive under art. 2315.)
Thereafter, in Castelluccio v. Cloverland Dairy Prod. Co., 165 La. 606, 115 So. 796 (1927), where a surviving husband had obtained judgment (it is not clear whether by survivorship or for wrongful death), *889 but died pending appeal, the court followed Vincent v. Sharp, supra, adopting Chivers' distinction of Vincent on the ground that the action had been merged into a judgment, which was then the property of the husband although appeal was pending. Castelluccio does repeat the reference to "the well-settled jurisprudence of this court, [that] an action for the recovery of damages for personal injuries sustained is a purely personal one, and does not survive the death of the beneficiary * * *."
Interestingly, where the surviving wife's favorable trial judgment was reversed on appeal and the wife died after rehearing granted, her heirs were held entitled to continue the mother's claim; Foy v. Little, 197 So. 313 (La.App. 1940), cert. denied. The heirs were her minor children and co-entitled survivors of their father, the victim. The court reasoned that the trial court judgment was property, citing Castelluccio, and that the trial court judgment had not been effectively reversed because the Court of Appeal decree reversing had not become final.
Throughout all of the cited litigation, C.P. art. 21, in both 1825 and 1870 versions, provided that "Actions do not abate by the death of one of the parties after answer filed."
Abatement by death of the tort victim was, of course, never an issue in the wrongful death cases like Hubgh: the death of the victim is by definition an element of a wrongful death cause of action, which only arises upon his death. Those early cases merely held that no one could recover his own damages resulting from the wrongful death of another. Yet those cases, coupled with the inept 1855 survivorship amendment presumably intended to allow wrongful death claims, became the "source", as "well settled jurisprudence," of a rule that a tort victim's "action" was a purely personal action, not heritable. Under this rule the "action" therefore died with the victim (except insofar as survivorship was expressly provided by statute), in spite of C.P. art. 21's non-abatement rule and the action-inheritance rules of C.C. arts. 944 and 945 and related articles and their forebears.
Of all the cited decisions, the only one which referred to the Civil Code articles on heritability of obligations was Vincent v. Sharp, which cited as authority for non-abatement C.C. (1825) art. 1994, now C.C. art. 1999.
Nevertheless abatement had, by whatever route, become part of our jurisprudence at least in Chivers, Huberwald and Kerner, and by obiter dictum in several other cases. The Legislature by Act 239 of 1946 apparently attempted to reject abatement by enacting "that there are no exceptions" to the non-abatement after answer rule, with other strange and strong provisions against construing other Acts, past or future, to make exceptions.
This Act did not accomplish its apparent purpose. In Gabriel v. United Theatres, 221 La. 219, 59 So.2d 127 (1952), the Supreme Court concluded that Act 333 of 1948, which amended art. 2315 relative to adopted children, but also reenacted it and repealed all conflicting laws, had repealed the non-abatement law of Act 239 of 1946.
Still the 1946 Act was incorporated by the Legislature into the 1950 Revised Statutes as R.S. 9:3349. But in McConnell v. Webb, 226 La. 385, 76 So.2d 405 (1954), the court suggested the 1946 "no exceptions" language was no broader than C.P. art. 21's language that "Actions do not abate * * *." Both wordings are too broad to be enforced without any exception, since there are some rights and obligations which are not heritable, such as usufruct, annuity, and tutorship. Because tort actions were non-heritable despite C.P. art. 21, the court reasoned, they remained non-heritable despite R.S. 9:3349. They abated on the death of the victim (except as otherwise provided by art. 2315).

*890 The 1960 Changes

The statutory law today includes changes in both the non-abatement statute and in C.C. art. 2315.
For the first time, the non-abatement rule does provide exceptions. C.C.P. art. 428 (successor to C.P. art. 21 and R.S. 9:3349) provides:
"An action does not abate on the death of a party. The only exception to this rule is an action to enforce a right or obligation which is strictly personal."
Thus today, unless the obligation to repair fault-caused damages is strictly personal, an instituted action to enforce that obligation does not abate on the plaintiff's death. Indeed, the obligation is purely one to pay money in an amount equated to the damage caused; and in this character it is not different from an obligation to pay money for contractual breach damages, or any other obligation to pay money.
C.C. art. 1999. "Every obligation shall be deemed to be heritable as to both parties, unless the contrary be specially expressed, or necessarily implied from the nature of the contract."
C.C. art. 2001. "The obligation shall be presumed to be personal as to the obligee, in a contract to do or to give, when that which was to be done or given, was exclusively for the personal gratification of the obligee, and could produce no benefit to his heirs." (Emphasis added).
In our opinion these codal provisions, expressly referred to in the redactors' official comment (c) to C.C.P. art. 428, and applicable as in pari materia and by analogy, C.C. arts. 17 and 21, support the conclusion that a tortfeasor's obligation to pay money to repair the damage he caused is not strictly personal as to the obligeevictim. The obligation could surely produce benefit to his heirs, and is no more exclusively for the personal gratification of the victim than any other money obligation.
This conclusion is further supported by the second 1960 change in the law, namely the amendment of art. 2315. Now the article expressly declares that a beneficiary's right to recover the victim's damages (as also his own) "is a property right which * * * is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not." It cannot now be said that the tortfeasor's obligation in favor of the beneficiary is strictly personal. But the obligation to repair the victim's damages is the very same, identical obligation which "survives" the victim's death in favor of the beneficiary.
Where suit is instituted by this beneficiary and he subsequently dies, his heirs can substitute themselves in his suit, and there is no one-year limitation upon their inheriting or substituting.
It seems to us unthinkable that an injured person's own claim for his damages could be not-property in his own hands, yet be property in the hands of the beneficiary to whom the claim "survives" on his death. Such a conclusion would afford greater benefit to the heirs or legatees of the beneficiary than to the beneficiary himself. It appears to us that the state today of art. 2315 requires recognition of the victim's own claim as property at all times. It is property during his life, even though a special rule of succession is established whereby his personal injury claim devolves upon statutorily designated beneficiaries (unlike his other property). It is property after his death, in the hands of the designated survivor-beneficiaries, but it is subject to no special rule of succession in their hands. At no time would the obligation of the tortfeasor to pay for the damage his fault caused be "strictly personal".
We conclude that an instituted action for personal injury, brought by the victim, does not abate on the victim's death.

*891 PROPERTY OF SURVIVORS
As long as art. 2315 spoke of "the right of this action" surviving in favor of designated beneficiaries, it might have been concluded that an instituted action was not governed by a provision dealing with a right of action (or right to institute the action). See Gabriel v. United Theatres, La.App. 1951, 50 So.2d 514 (reversed, 221 La. 219, 59 So.2d 127).
Today art. 2315 provides, instead, that the "right to recover" survives in favor of the designated beneficiaries.
In our opinion the present language provides (at least if designated beneficiaries do survive) for the devolution of the victim's claim, even where he has instituted an action, to the survivors designated by art. 2315. The "right to recover" belongs to them, and not to the succession of the victim nor to his heirs as such.

SUBSTITUTION NOT RESTRICTED BY ONE-YEAR "SURVIVAL"
At the beginning of our discussion of abatement, we pointed out that art. 2315's words are "the right to recover * * shall survive for a period of one year * *." We noted the words cannot mean anything more than that an action must be instituted within the year (as, indeed, every tort action must be instituted within a year of the damage, C.C. arts. 3536-7, or be subject to the exception of prescription). The language cannot mean that, even if the survivor instituted an action within the year, his "right to recover" is lost unless merged into favorable judgment within the year.
Still it might be said that the "right to recover" must be judicially asserted, whether by suit when no action has been previously instituted or by substitution in an instituted action, within the one year. We reject this view as to an instituted action, because there the "right to recover" has been judicially asserted already by the victim, and his assertion of the action ought to suffice to put the defendants on notice for all purposes of litigation. After all, it is indisputable that the survivor's instituted action suffices for the survivor's heirs under the present art. 2315, which could hardly have intended to put the survivor's heirs in a position superior to that of the survivor himself.
In our opinion, the sole effect of the one year provision under today's law is to extend the basic one-year tort prescription period to allow the designated survivors to bring suit a year after the victim's death, where the victim was injured some time before his death, and the survivor claims both for wrongful death (which occurred less than a year prior to suit) and for the victim's damages (which occurred more than a year prior to suit and would by ordinary rules have prescribed).
There is a radical difference between institution of an action and substitution of parties in an instituted action. For lack of timely institution of suit, a claim is lost by liberative prescription (or in some cases by peremption). There is no time-limitation on substitution as such; this is only a procedural matter. The key issue in the substantive matter of survival is whether an instituted action abates, or whether it survives (so that substitution can occur). Once an action is instituted by either victim or survivors, since it does not abate only the five-year inaction abandonment rule of C.C.P. art. 561 is applicable, and it of course applies equally as to original plaintiffs and as to substituted plaintiffs.

C.C.P. Art. 801
We note that C.C.P. art. 801 was amended in 1962 to define the "legal successor", who may have himself substituted in an action, as:
"(1) The survivors designated in Article 2315 of the Civil Code, if the action survives in their favor; and *892 "(2) Otherwise, it means the succession representative * * * or the heirs * * *."
An argument is made that it is only when, i. e., during the time that, the action survives in favor of art. 2315 survivors that they may be substituted. We believe the structure of C.C.P. art. 801 requires the interpretation rather that if, i. e., in the case that, the action devolves on art. 2315 survivors, which is every tort personal injury action, then the survivors may have themselves substituted. "Otherwise", namely in every tort property damage action, every contract and every property case  where the action does not survive in favor of art. 2315 beneficiaries  the succession representative or heirs may be substituted.

CONCLUSION
We conclude that art. 2315 today, construed in the light of its history and together with legislative amendments to the laws, including C.C.P. arts. 428 and 801, must be interpreted as providing for survival of a tort victim's right to recover personal injury damages in favor of the designated survivors. Where no action has been instituted, the right to institute an action survives only during one year from the victim's death, but the "right to recover" survives beyond that period if the action is timely instituted. Where the victim had instituted an action, the "right to recover" the victim's damages survives as long as the instituted action is not abandoned and the one-year period of art. 2315 is no more applicable to the victim-instituted action than it is to the survivor-instituted action. As long as the victim's instituted action is not abandoned, C.C.P. art. 561, the survivors may have themselves substituted at any time to pursue the victim's claim for personal injury damages.

OTHER JURISPRUDENCE
Succession of Roux v. Guidry, 182 So.2d 109 (La.App. 4 Cir. 1966), cert. denied, 248 La. 1106, 184 So.2d 27, was exclusively a wrongful death case, where the victim had never instituted an action. It makes no statements referable to survivorship of a victim's instituted action.
Marvin v. Toye Bros. Yellow Cab Co., 214 So.2d 196 (La.App. 4 Cir. 1968), held, without discussion except of art. 2315's "shall survive for a period of one year" language, that in an instituted action for personal injury damages, the art. 2315 survivors could not substitute themselves for the original plaintiffs 21 months after plaintiffs' deaths (in an unrelated accident).
While it is true that the questions we have here resolved were not even discussed in Marvin, nevertheless Marvin's result is squarely opposed in the result our views require. We would overrule Marvin.

CONCURRING THEORY
A concurring view is based on the fact in this case, that a supplemental petition was filed within a year of the victim's death by the widow "as administratrix", praying for substitution of the widow, "administratrix", and for the originally-sought damages "in favor of the Estate" of the victim.
This petition was unquestionably an attempt by the widow, however unskillful, to maintain her now-deceased husband's personal injury suit.
The second petition by the widow, filed more than a year after her husband's death, is also described as the petition of "Ella Moore Delacroix, Administratrix of the Succession of Rene G. Delacroix". But, in addition to asserting the widow's claim for her personal damages from the wrongful death, this petition prayed for judgment in favor of "Ella Moore Delacroix" (not described as administratrix) in the same amount of $97,000 originally demanded by her husband. (Although the wrongful death claim was withdrawn, the prayer remains, for judgment in favor of, simply, "Ella Moore Delacroix".)
*893 The adherents to the present opinion do not express any disapproval of the theory that the widow's "right to recover" was preserved by the first petition by the widow-administratrix for judgment for the estate, as amended by the second petition to pray for judgment in favor of "Ella Moore Delacroix". Nevertheless we have doubt as to its correctness, because of the analogous situation in the wrongful death case of Succession of Roux v. Guidry, supra, decided under the Code of Civil Procedure. We doubt we could in effect overrule Roux, because the Supreme Court in denying writs stated there appeared no error of law.
In Roux, one child of the deceased victim sued within a year of the victim's death for wrongful death damages, "in his capacity as `the duly appointed and qualified administrator'" of the succession of the victim, "for damages suffered by the heirs of decedent because of the alleged wrongful death and prayed for judgment in favor of the succession." More than a year after the victim's death, five children (including the one who sued as administrator) "in their individual capacities joined the succession representative as plaintiffs". The court did not discuss the circumstance that one survivor did sue for wrongful death within the one year period of art. 2315, although "in his capacity" of administrator rather than individually, and asked for judgment for the succession rather than for himself individually.
It may be that Roux can be distinguished because it involved an original petition by the administrator in a wrongful death case. But it appears to us that the case would support the conclusion that where both the petitioner's alleged capacity and the prayer indicate a demand by the succession, the demand will not be treated as one by the human person who is both an art. 2315 survivor and the succession representative. We may point out that C.C.P. art. 854 declares "No technical forms of pleading are required", and art. 855 provides "It is not necessary to allege the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity * * *." Also art. 862 provides "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings * * *." Since, under art. 855, declaration of capacity is mere surplusage, and, under art. 862, the individual (disregarding his alleged capacity) might be given judgment individually (disregarding his lack of prayer for it), a different result might have been reached in Roux.
In McConnell v. Webb, supra, the victim died (from unrelated cause) pending his appeal from a trial court judgment rejecting his claim. The widow, "who is appearing solely in her capacity as administratrix of his succession", sought to continue the appeal, but the appeal was dismissed on the theory that art. 2315 designated the only survivors who might succeed to the victim's claim, and the administratrix was not included in the designation. McConnell was decided in 1954, prior to the adoption of the Code of Civil Procedure with its liberalized pleading rules including art. 855 which, as noted above, no longer required an allegation of capacity or of representative authority.
We are aware of McKay v. Southern Farm Bur. Cas. Co., 123 So.2d 658 (La.App. 1960), cert. denied, where minors, through persons not yet appointed their tutors, attempted within a year of the victim's death to be substituted in the victim's action, and that attempt was held effective due to the "relation back" of their subsequent amended petition showing tutors had formally been appointed.
But because of the refusal of writs in Roux, we prefer to base our decision here on the grounds previously stated, rather than rely on the circumstance that here a petition for judgment "in favor of the estate" was filed within a year of the victim's death.

*894 Quantum

On quantum, we would adopt the views stated by this court on original hearing.
We would therefore reinstate our original decree exactly as handed down.
Original decree reinstated.
GULOTTA, Judge (concurring).
I concur with the conclusions and results reached by the majority. However, I do not subscribe to the reasoning relied upon in that part of the opinion other than that relating to the "concurring theory" as designated in the majority opinion.
Clearly, the right of the survivor exists under LSA-C.C. art. 2315, and this right must be asserted within a period of one year from the date of death of the injured party. This right is created under LSA-C.C. arts. 2315 and in the event that the suit is not filed or the right is not asserted within the prescribed period of one year from the date of death, the right is perempted.
It is my opinion that the widow of the injured party herein has a right of action as survivor under LSA-C.C. art. 2315. She timely filed a supplemental and amended petition on February 23, 1966, which was within one year of the death of the victim. Admittedly, the petition erroneously alleged and asserted the widow's demands in her position as administratrix and thus prayed for judgment in favor of the estate of the decedent. In so doing, the widow limited her demand to that of administratrix of the estate. However, I feel that upon the filing of the second supplemental and amended petition on March 22, 1966, although more than one year after death, she thereby asserted her survival action which action then related back to the first supplemental and amended petition which had been timely filed by the surviving spouse within the peremptive period of one year.
In the case of McKay v. Southern Farm Bureau Casualty Company et al., 123 So.2d 658 (La.App.1960), rehearing denied Nov. 2, 1960; certiorari denied Jan. 9, 1961, the Court permitted minors to be substituted as plaintiffs in a suit filed subsequent to the death of their father which substitution was more than one year after death. The Court said the second petition related back to the petition for substitution of parties filed prior to the expiration of one year from death, even though the original timely filed petition for substitution was faulty in that petitioners were not properly qualified and confirmed in their capacity as tutors of the minors. The Court in the McKay case further permitted an additional person to be substituted as plaintiff who was not represented and who was not a party to the timely filed first petition for substitution.
The facts in the McKay case were that two minor children of the decedent, through guardians, within one year from date of death, filed a rule to show cause why they should not be substituted as plaintiffs by virtue of the death of their father. Exceptions to the capacity of the minors and to the "guardians" were maintained on the grounds that the "guardians" were not properly qualified as tutors in probate proceedings. The Court permitted the right to amend. Subsequent to the expiration of one year from the death of the father, by motion, the two minor children through their properly qualified and confirmed tutors were substituted as parties plaintiff and an additional third child of the decedent was added in the motion who was not a party to the original motion for substitution filed prior to the expiration of one year.[1] The Court in permitting the substitution and affirming the decision of the *895 trial court overruling and denying the plea of peremption or prescription, stated:
"In our opinion, the plaintiffs' rights under LSA-C.C. Article 2315 to be substituted for the deceased original tort-plaintiff were not extinguished by prescription and/or peremption, because within the requisite year pleadings were filed which (although imperfectly styled and imperfect in statement) fairly apprised the defendants of the right of the two named minors to be substituted for the decedent. Callendar v. Marks, 185 La. 948, 171 So. 86; Reeves v. Globe Indemnity Company, 185 La. 42, 168 So. 488; Kansas City Fire & Marine Ins. Co. v. Hillman, La.App. 1 Cir., 118 So. 2d 174; Angelette v. Hardie, La.App. Orl., 70 So.2d 196, 197; Reynolds Metal Co. v. T. L. James & Co., La.App.Orl., 69 So.2d 630; Smith v. Monroe Grocery Co., La.App. 2 Cir., 171 So. 167. As these cases hold, in such circumstances, even though the timely-filed initial proceedings are subject to dismissal due to imperfection in pleading, the court should properly permit an amendment thereof to supply the deficiencies (as did the trial court in the present instance), which amendment relates back to the date that the original pleadings were filed, for purposes of deciding whether a cause of action arising under LSA-C.C. Art. 2315 was filed within the peremptive year. See Also Jackson v. American Employers' Ins. Co., 202 La. 23, 11 So.2d 225.
"In summary, the right of the minors Dolphus McKay, Jr., and Mattie Mae McKay to be substituted as parties plaintiff for their father who had died on June 21, 1957 was clearly sought by the proceedings filed on June 5, 1958. Although these pleadings were defective as to form and allegations and were therefore dismissed on exceptions, the trial court properly at the same time reserved the right of the plaintiffs to amend such proceedings. The substitution of the minors on October 2, 1958, pursuant to such reservation of the right to amend, relates back to the filing of the initial proceedings on June 4, within the prescriptive year, so that the minors' rights to be substituted was not extinguished by peremption or prescription." McKay, supra, at 666, 667.
In view of the decision of the Court in the McKay case permitting not only an amendment to be filed correcting deficient pleadings relating back to the original timely filed motion but also permitting an entirely different person to be added to the cause of action, it would, therefore, be proper to permit in the second supplemental petition filed in this case, involving the same party in a different capacity, to relate back to the filing of the first supplemental, and amended petition.
LSA-C.C.P. art. 855 and LSA-C.C.P. art. 862 would seem to substantiate the view expressed in the McKay case.
LSA-C.C.P. arts. 855 reads:
"It is not necessary to allege the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of a legal entity or an organized association of persons made a party. Such procedural capacity shall be presumed, unless challenged by the dilatory exception."
LSA-C.C.P. art. 862 states:
"Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief."
Also consistent with this view is the fundamental principle that pleadings should be liberally construed so that the pleader will have this day in court and that the ends of justice will best be served. Glass v. Vista Shores Club, 221 So.2d 304, (La. App. 4th Cir., 1969). It is well established that technical rules of pleadings no longer *896 obtain and all doubt must be resolved in favor of the pleader to the end that substantial justice will be achieved. Boudreaux v. Allstate Finance Corporation, 217 So.2d 439 (La.App. 1st Cir., 1968). LSA-C.C.P. arts. 854, 865.
The majority in the "concurring theory" part of its opinion appears to reluctantly reject the McKay rule because of McConnell v. Webb, 226 La. 385, 76 So.2d 405 (1954); rehearing denied Nov. 8, 1954, wherein the Court dismissed the action of the widow who appeared solely in her capacity as administratrix of the succession on the theory that art. 2315 designated the only survivors who might succeed to the victim's claim and the administratrix was not included in this description. The majority opinion hastens, however, to properly distinguish the McConnell case on the grounds that had the Code of Civil Procedure been enacted at the time of the McConnell case, a different conclusion might have been reached.
The majority opinion further rejects the McKay theory because of the case of Succession of Roux v. Guidry, 182 So.2d 109 (La.App. 4th Cir., 1966), which is a contrary holding, for the reason that the Supreme Court of Louisiana denied writs in the Roux case and in so doing found no error of law. The McKay case and the Roux case were from different circuit courts. It is noteworthy that the Supreme Court also denied writs in McKay; therefore, it appears that no greater significance should be placed on the denial by the Supreme Court to grant writs in the Roux case than can be placed on the denial by the Supreme Court to grant writs in the McKay case.
Apparently, each case embraces different reasoning and different conclusions. Accordingly, I am of the opinion that the reasoning and conclusions as reflected by the McKay case are more in line with the concept that a liberal construction of pleadings be permitted the pleader in order to allow him to have his day in court and thereby best serve the ends of justice.
I respectfully concur with the majority, however, for the reasons assigned in the concurring opinion.
LeSUEUR, Judge (concurring).
I concur in the decree for the reasons stated in our original opinion.
REGAN, Judge (dissenting).
I subscribe to the views expressed in the dissenting opinion of Samuel, J. I would only add that I interpret the phrase "right to recover" as written in the third paragraph of LSA-C.C. Article 2315 to be synonymous with "right of action".
I respectfully dissent.
SAMUEL, Judge (dissenting).
The right to recover damages for personal injuries sustained by another who subsequently dies did not exist prior to the enactment of the pertinent provisions of Civil Code Article 2315. As created by the article that right comes into existence upon the death of the injured party, runs in favor of the beneficiaries named in the article, and survives for a period of one year from the death of the injured party. As the article creates the right of action and stipulates the delay within which the right is to be exercised, the delay thus fixed is peremption. Unlike prescription, which simply bars the remedy, peremption destroys the right of action itself. After the peremptive period expires the right of action no longer exists. Succession of Roux v. Guidry, La.App., 182 So.2d 109, and authorities cited therein.
Thus, in the instant case the injured plaintiff's widow could recover only if she *897 had exercised her right to do so within the one year peremptive period, either by substituting herself as a plaintiff in the suit instituted by her husband or by instituting her own suit. Having failed to timely assert her rights as a survivor, those rights have been lost.
I am unable to understand how a proper but untimely attempt to substitute herself as a survivor could relate back to the substitution of the succession. When the second substitution was attempted, more than a year after the injured party's death, there was nothing to relate back to. All rights the widow had as a survivor under Article 2315 had been irrevocably lost when the one year peremptive period expired. Unlike McKay v. Southern Farm Bureau Casualty Company, La.App., 123 So.2d 658, here the right of the widow to substitute herself as a party plaintiff for her deceased husband was not "clearly sought" by the substitution of his succession as a party plaintiff.
Nor am I impressed by the reliance on contentions relative to abatement and the instituted action having become the property of the survivors. Use of a strained interpretation of procedural law to increase the peremptive period during which the right to recover must be exercised has the effect of destroying the substantive law which created the right. And even if the instituted action becomes the property of the Article 2315 survivors, that property is lost when the one year peremptive period expires without the right to recover having been exercised.
In many respects liberative prescription and peremption are necessarily and inherently harsh. But this fact should not affect an application of the law as written.
I respectfully dissent.
CHASEZ, Judge (dissenting).
I concur with the views expressed by my colleagues, Judge Samuel and Judge Taylor, in their dissenting opinions.
The question of the heritability of the deceased's right to recover for his personal injuries sustained prior to death was squarely before this court in Marvin v. Toye Brothers Yellow Cab Company, La.App., 214 So. 2d 196 (1968). The question was given diligent consideration in that case and it was determined that the 1960 amendments to LSA-C.C. art. 2315 had not changed the prior law and jurisprudence of this state in that regard. I adhere to the views enunciated in that case. The deceased's right to recover for his personal injuries is a non-heritable right.
Accordingly when the widow of the deceased failed to assert a right of action in her own behalf within one year of the death of her husband, her right to do so perempted and thereby passed out of existence. Her second amended petition can avail her of nothing because once her right had perempted there was nothing to which her petition could relate back. Succession of Roux v. Guidry, La.App., 182 So.2d 109 (1966).
The abatement articles of the Code of Civil Procedure are inapplicable to this situation. The deceased's right of action, being strictly personal to him, died with him and his widow failed to timely assert her own right of action.
I respectfully dissent.
TAYLOR, Judge (dissenting).
I cannot agree with the decision reached by the majority in this case.
We are called upon here to pass solely on a question of law  a question long ago answered by the jurisprudence of this state. We are asked to determine whether an injured person's action created pursuant to LSA-C.C. art. 2315 to recover for his personal injuries is a heritable right. I do not believe that it is.
The right to recover for one's personal injuries is not a common law right. It exists *898 in Louisiana only by virtue of LSA-C.C. art. 2315 and is a right which is strictly personal to the injured party. Under neither the civil nor the common law has this right to recover for one's personal injuries ever been considered a heritable right. Kerner v. Trans-Mississippi Terminal R. Co., 158 La. 853, 104 So. 740 (1925). Only an act of the legislature can, in my opinion, make such a right heritable and recent amendments to LSA-C.C. art. 2315 have not altered the prior law of the state in this regard. The right of the injured party to recover his damages for personal injuries ceases to exist when the injured person expires. Covey v. Marquette Casualty Company, La.App., 84 So.2d 217 (1955); Maher v. Schlosser, La.App., 144 So.2d 706 (1962).
LSA-C.C. art. 2315 reads as follows:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

"The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.
"The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.
"As used in this article, the words `child', `brother', `sister', `father', and `mother' include a child, brother, sister, father, and mother, by adoption respectively." (Emphasis added)
As may be seen, the second paragraph of LSA-C.C. art. 2315 provides that the right to recover property damages caused by an offense or quasi offense is heritable. The language used in paragraph two to provide for this heritability is clear, concise and specific. It is also the only language in LSA-C.C. art. 2315 which enunciates which rights of the injured party are heritable. Therefore under the maxim "expressio unius est exclusio alterius", I feel that the legislature intended that only the right to recover property damage was to be heritable and not the right to recover for the deceased's personal injuries. Furthermore, when one considers the time honored jurisprudence of the state  that the right to recover for one's personal injuries was a non-heritable personal right  it was all the more important for the legislature to clearly and specifically provide for heritability if such was its intention. But the legislature did not so provide.
Instead the legislature adopted paragraph three of LSA-C.C. art. 2315 to deal with the right to recover damages for personal injury suffered by the deceased. The effect of paragraph three is not to make the deceased's right to recover such damages heritable. To the contrary, the deceased's right of action still dies with him. However, pursuant to paragraph three and if the deceased's right had not prescribed prior to his death, there arises for the first time, at the moment of the death of the injured party, a new right of action which *899 accrues in favor of one of the specific classes of people in the order enumerated in the statute. This new right of action, unlike the deceased's right of action, is a property right because the statute so provides. This new right of action must be exercised by the filing of a law suit by the appropriate party or parties as enumerated in LSA-C.C. art. 2315 within a period of one year from the death of the deceased at which time it perempts.
Indeed if the legislature had intended that the right to recover for the deceased's personal injuries was to be a heritable right, it would not have enumerated the three classes in whose favor the "right to recover" survives. The civil code provides the manner in which property devolves upon the death of the owner and it does not necessarily devolve on one of the three enumerated classes in LSA-C.C. art. 2315. For example, if a married woman without children were to be injured and subsequently die, under the terms of LSA-C.C. art. 2315 her husband could assert a right of action for her injuries. However if her initial right of action is heritable, her parents and brothers and sisters would assert the right of action because such right of action is the wife's separate property to which the husband has no claim. Furthermore LSA-C.C. art. 2315 limits specifically those people who might ever assert such a right whereas if the right were heritable, collaterals of distant relation could conceivably prosecute their deceased relative's claim if they were his closest living heirs.
The argument has been made that there should be a distinction in the treatment given to a situation like this in which the deceased filed suit prior to his death. It is urged that if suit is not filed prior to the death of the deceased that one of the three enumerated classes is the proper party plaintiff to assert a right of action. However if the deceased asserts a right by filing suit, he has thereby acquired a fully matured property right which is heritable under our general laws of descent and distribution. I find this position untenable.
LSA-C.C. art. 2315 makes no distinction between the situation in which suit was filed prior to death and the situation in which it was not. Neither may one find support for this position from the abatement articles of the Code of Civil Procedure. The Code of Civil Procedure does not alter the substantive law enunciated in the Civil Code. It merely provides the manner in which a substantive right may be exercised.
It is argued that LSA-C.C.P. art. 428 is authority for the fact that once the deceased filed suit, he had a heritable right which might be exercised in the name of his estate. That article reads as follows:
"An action does not abate on the death of a party. The only exception to this rule is an action to enforce a right or obligation which is strictly personal." (Emphasis added)
This article patently recognizes the fact that the right to enforce a personal obligation ceases to exist at the moment the possessor dies. However of further importance are the comments under LSA-C.C.P. art. 428 a portion of which reads as follows:

"If the plaintiff has elected to enforce a right of action by instituting suit thereon, then his heirs, or his survivors under the amended Art. 2315 of the Civil Code, have the right to continue its prosecution, if the plaintiff dies."
(Emphasis added)
This language clearly indicates that there is no difference in the treatment of a claim under LSA-C.C. art. 2315 which results from the deceased's filing suit prior to death as opposed to his failure to file. If a man suffers personal injury and property damage, he has a cause and a right of action *900 to recover given him by LSA-C.C. art. 2315. If he dies, regardless of whether he filed suit prior to death or not, his legal heirs may assert his property damage claim and "his survivors under the amended Art. 2315 of the Civil Code" may assert a claim for his personal injuries. Furthermore it is obvious that the estate of the deceased is not one of the survivors enumerated.
The effect of this language is to provide the procedural method for enforcing the substantive right which LSA-C.C. art. 2315 created. In short, if the injured party dies subsequent to filing suit, the deceased's heirs may substitute themselves as parties plaintiff to enforce the deceased's property right which they inherit. The survivors enumerated in the article may substitute themselves as parties plaintiff in the suit already filed to assert their new right of action based on the same cause of action alleged in that suit. This obviates the necessity for the parties involved to file a new law suit.
It has been stated by the majority that even if it was once the law of Louisiana that the deceased's right to recover his personal injury damages was a non-heritable right, the 1960 amendment to LSA-C.C. art. 2315 changed this. However upon an examination of the history of the article, I feel that this is not the case.
The so-called "survivorship action" has been in existence since 1870. For more than one hundred years, LSA-C.C. art. 2315 has contained a provision which states which classes of people may assert a right of action to recover for injuries sustained by the deceased. At no time was the deceased's right to recover for his personal injuries considered heritable prior to the 1960 amendment. The question is therefore in what respect the 1960 amendment has altered LSA-C.C. art. 2315 and the jurisprudence decided prior to the amendment.
Professor Henry G. McMahon has stated most concisely, in an explanatory note to the amended article, the changes which the 1960 amendment made in the prior law. The changes are five-fold:

"First, it makes a right of action, or an action, to recover property damage heritable. Second, it broadens the primary class of survivors so as to include major children. Third, if a survivor who has the right to recover damages for the physical injury or wrongful death of a deceased person should die, after instituting suit but before judgment, the instituted action is inherited by the survivor's heirs, who may be substituted as parties plaintiff. In this respect, the amendment overrules legislatively Chivers v. Roger, 1898, 50 La.Ann. 57, 23 So. 100 and the cases based thereon. Fourth, if the survivor should die before instituting suit to recover damages for the physical injury or wrongful death of a deceased person, the right to sue is inherited by the survivor's heirs. In this respect, the amendment overrules legislatively Kerner v. Trans-Mississippi Terminal R. Co., 1925, 158 La. 853, 104 So. 740, and the cases which have followed it. Fifth, the amendment places relatives by adoption on the same basis as blood relatives."

However none of these changes are relevant to the facts we presently have before us. This is not a case in which a survivor named by the article has died and his heirs are now attempting to exercise the deceased survivor's right. This is a case in which a named survivor failed to timely appear before the court to assert her own right of action based on the cause of action set forth in her deceased husband's suit. The law has always been that the initial survivor must act within one year of the death of the deceased to assert the right which accrues to him by virtue of the terms of LSA-C.C. art. 2315. The new amendment does not change the prior law in this regard.
Nor am I able to subscribe to the view of those concurring with the majority who *901 feel that the widow of the deceased was properly before the court on her own behalf by virtue of her second amended petition.
On February 23, 1966, Mrs. Ella Moore Delacroix filed a supplemental and amended petition in her capacity as administratrix of the succession of her deceased husband. In this pleading she prayed for judgment "in favor of the Estate of Rene G. Delacroix". At no time in this document did she attempt to assert a right of action in her own name and on her own behalf. She appeared solely as "the proper party plaintiff to sue to enforce a right of the deceased or of his succession." LSA-C.C.P. art. 685. Yet as has been stated before the succession representative or the succession is not a named survivor under LSA-C.C. art. 2315 and it might be added at this point for good reason.
It was never the intention of the legislature that the creditors of the deceased be empowered to assert a right of action for the deceased's personal injuries. Yet if the estate of the deceased may sue to collect such damages, it is the creditors of the deceased who will benefit first. The administratrix of the deceased's estate had no right of action to prosecute any demand for damages arising out of the deceased's personal injuries. McConnell v. Webb, 226 La. 385, 76 So.2d 405 (1954).
Accordingly when the second amended petition was filed more than one year after the deceased's demise, it was not sufficient to preserve Mrs. Delacroix's right to recover for her husband's personal injuries. This was the first time that Mrs. Delacroix attempted to assert a right of action on her own behalf and by this time the one year peremptive period had expired and such right of action no longer existed. I am therefore of the opinion that the judgment of the trial court was correct and should be affirmed.
I respectfully dissent.
NOTES
[1] It was conceded by counsel for defendant-appellant in the McKay case that if the defective pleadings filed by the original two minor children had prevented the accrual of prescription and/or peremption, then the third child's rights (though filed after the expiration of one year) to be substituted as a survivor had also been preserved by the timely action of his co-beneficiaries.