ROBERTSON *v.* WEGMANN, EXECUTOR, ET AL.

No. 77–178.   Argued March 21, 1978—Decided May 31, 1978

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, POWELL, REHNQUIST, and STEVENS, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which BRENNAN and WHITE, JJ., joined, *post*, p. 595.

*Malcolm W. Monroe* argued the cause for petitioner. With him on the briefs was *Eberhard P. Deutsch.*

Respondent *Edward F. Wegmann* argued the cause and filed a brief *pro se.**

MR. JUSTICE MARSHALL delivered the opinion of the Court.

In early 1970, Clay L. Shaw filed a civil rights action under 42 U. S. C. § 1983 in the United States District Court for the Eastern District of Louisiana. Four years later, before trial had commenced, Shaw died. The question presented is whether the District Court was required to adopt as federal law a Louisiana survivorship statute, which would have caused this action to abate, or was free instead to create a federal common-law rule allowing the action to survive. Resolution of this question turns on whether the state statute is "inconsistent with the Constitution and laws of the United States." 42 U. S. C. § 1988.[1]

***

**Charles A. Bane, Thomas D. Barr, Robert A. Murphy, Richard S. Kohn, *William E. Caldwell,* and *Norman J. Chachkin* filed a brief for the Lawyers' Committee for Civil Rights under Law as *amicus curiae* urging affirmance.

[1] Title 42 U. S. C. § 1988 provides in pertinent part:

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of

I

In 1969, Shaw was tried in a Louisiana state court on charges of having participated in a conspiracy to assassinate President John F. Kennedy. He was acquitted by a jury but within days was arrested on charges of having committed perjury in his testimony at the conspiracy trial. Alleging that these prosecutions were undertaken in bad faith, Shaw's § 1983 complaint named as defendants the then District Attorney of Orleans Parish, Jim Garrison, and five other persons, including petitioner Willard E. Robertson, who was alleged to have lent financial support to Garrison's investigation of Shaw through an organization known as "Truth or Consequences." On Shaw's application, the District Court enjoined prosecution of the perjury action, *Shaw* v. *Garrison*, 328 F. Supp. 390 (1971), and the Court of Appeals affirmed, 467 F. 2d 113 (CA5 1972).[2]

Since Shaw had filed an action seeking damages, the parties continued with discovery after the injunction issued. Trial was set for November 1974, but in August 1974 Shaw died. The executor of his estate, respondent Edward F. Wegmann (hereafter respondent), moved to be substituted as plaintiff,

the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

[2] The Court of Appeals held that this Court's decision in *Younger* v. *Harris*, 401 U. S. 37 (1971), did not bar the enjoining of the state perjury prosecution, since the District Court's "finding of a bad faith prosecution establishes irreparable injury both great and immediate for purposes of the comity restraints discussed in *Younger*." 467 F. 2d, at 122.

and the District Court granted the motion.[3]  Petitioner and other defendants then moved to dismiss the action on the ground that it had abated on Shaw's death.

The District Court denied the motion to dismiss.  It began its analysis by referring to 42 U. S. C. § 1988; this statute provides that, when federal law is "deficient" with regard to "suitable remedies" in federal civil rights actions, federal courts are to be governed by

> "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of [the] civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States."

The court found the federal civil rights laws to be "deficient in not providing for survival." *Shaw* v. *Garrison,* 391 F. Supp. 1353, 1361 (1975).  It then held that, under Louisiana law, an action like Shaw's would survive only in favor of a spouse, children, parents, or siblings.  Since no person with the requisite relationship to Shaw was alive at the time of his death, his action would have abated had state law been adopted as the federal rule.  But the court refused to apply state law, finding it inconsistent with federal law, and in its place created "a federal common law of survival in civil rights actions in favor of the personal representative of the deceased." *Id.,* at 1368.

On an interlocutory appeal taken pursuant to 28 U. S. C. § 1292 (b), the United States Court of Appeals for the Fifth Circuit affirmed.  The court first noted that all parties agreed that, "if Louisiana law applies, Shaw's § 1983 claim

---

[3] See Fed. Rule Civ. Proc. 25 (a) (1).  As the Court of Appeals observed, this Rule "does not resolve the question [of] what law of survival of actions should be applied in this case.  [It] simply describes the *manner* in which parties are to be substituted in federal court once it is determined that the applicable substantive law allows the action to survive a party's death."  545 F. 2d 980, 982 (CA5 1977) (emphasis in original).

abates." 545 F. 2d 980, 982 (1977). Like the District Court, the Court of Appeals applied 42 U. S. C. § 1988, found federal law "deficient" with regard to survivorship, and held Louisiana law "inconsistent with the broad remedial purposes embodied in the Civil Rights Acts." 545 F. 2d, at 983. It offered a number of justifications for creating a federal common-law rule allowing respondent to continue Shaw's action: Such a rule would better further the policies underlying § 1983, 545 F. 2d, at 984–985; would "foste[r] the uniform application of the civil rights laws," *id.*, at 985; and would be consistent with "[t]he marked tendency of the federal courts to allow actions to survive in other areas of particular federal concern," *ibid.* The court concluded that, "as a matter of federal common law, a § 1983 action instituted by a plaintiff prior to his death survives in favor of his estate." *Id.*, at 987.

We granted certiorari, 434 U. S. 983 (1977), and we now reverse.

## II

As both courts below held, and as both parties here have assumed, the decision as to the applicable survivorship rule is governed by 42 U. S. C. § 1988. This statute recognizes that in certain areas "federal law is unsuited or insufficient 'to furnish suitable remedies' "; federal law simply does not "cover every issue that may arise in the context of a federal civil rights action." *Moor* v. *County of Alameda*, 411 U. S. 693, 703, 702 (1973), quoting 42 U. S. C. § 1988. When federal law is thus "deficient," § 1988 instructs us to turn to "the common law, as modified and changed by the constitution and statutes of the [forum] State," as long as these are "not inconsistent with the Constitution and laws of the United States." See n. 1, *supra.* Regardless of the source of the law applied in a particular case, however, it is clear that the ultimate rule adopted under § 1988 " 'is a federal rule responsive to the need whenever a federal right is impaired.' "

*Moor* v. *County of Alameda, supra,* at 703, quoting *Sullivan* v. *Little Hunting Park, Inc.,* 396 U. S. 229, 240 (1969).

As we noted in *Moor* v. *County of Alameda,* and as was recognized by both courts below, one specific area not covered by federal law is that relating to "the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant." 411 U. S., at 702 n. 14.[4] State statutes governing the survival of state actions do exist, however. These statutes, which vary widely with regard to both the types of claims that survive and the parties as to whom survivorship is allowed, see W. Prosser, Law of Torts 900–901 (4th ed. 1971), were intended to modify the simple, if harsh, 19th-century common-law rule: "[A]n injured party's personal claim was [always] extinguished . . . upon the death of either the injured party himself or the alleged wrongdoer." *Moor* v. *County of Alameda, supra,* at 702 n. 14; see *Michigan Central R. Co.* v. *Vreeland,* 227 U. S. 59, 67 (1913). Under § 1988, this state statutory law, modifying the common law,[5]

---

[4] The dissenting opinion argues that, despite this lack of coverage, "the laws of the United States" are not necessarily "[un]suitable" or "deficient in the provisions necessary." 42 U. S. C. § 1988; see *post,* at 595. Both courts below found such a deficiency, however, and respondent here agrees with them. 545 F. 2d, at 983; *Shaw* v. *Garrison,* 391 F. Supp. 1353, 1358–1361 (1975); Brief for Respondent 6.

There is a survivorship provision in 42 U. S. C. § 1986, but this statute applies only with regard to "the wrongs . . . mentioned in [42 U. S. C.] section 1985." Although Shaw's complaint alleged causes of action under §§ 1985 and 1986, the District Court dismissed this part of the complaint for failure to state a claim upon which relief could be granted. 391 F. Supp., at 1356, 1369–1371. These dismissals were not challenged on the interlocutory appeal and are not at issue here.

[5] Section 1988's reference to "the common law" might be interpreted as a reference to the decisional law of the forum State, or as a reference to the kind of general common law that was an established part of our federal jurisprudence by the time of § 1988's passage in 1866, see *Swift* v. *Tyson,* 16 Pet. 1 (1842); cf. *Moor* v. *County of Alameda,* 411 U. S., at 702 n. 14 (referring to the survivorship rule "at common law"). The

provides the principal reference point in determining survival of civil rights actions, subject to the important proviso that state law may not be applied when it is "inconsistent with the Constitution and laws of the United States." Because of this proviso, the courts below refused to adopt as federal law the Louisiana survivorship statute and in its place created a federal common-law rule.

### III

In resolving questions of inconsistency between state and federal law raised under § 1988, courts must look not only at particular federal statutes and constitutional provisions, but also at "the policies expressed in [them]." *Sullivan* v. *Little Hunting Park, Inc., supra,* at 240; see *Moor* v. *County of Alameda, supra,* at 703. Of particular importance is whether application of state law "would be inconsistent with the federal policy underlying the cause of action under consideration." *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454, 465 (1975). The instant cause of action arises under 42 U. S. C. § 1983, one of the "Reconstruction civil rights statutes" that this Court has accorded " 'a sweep as broad as [their] language.' " *Griffin* v. *Breckenridge,* 403 U. S. 88, 97 (1971), quoting *United States* v. *Price,* 383 U. S. 787, 801 (1966).

Despite the broad sweep of § 1983, we can find nothing in the statute or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship. The

---

latter interpretation has received some judicial and scholarly support. See, *e. g., Basista* v. *Weir,* 340 F. 2d 74, 85–86, n. 10 (CA3 1965); Theis, Shaw v. Garrison: Some Observations on 42 U. S. C. § 1988 and Federal Common Law, 36 La. L. Rev. 681, 684–685 (1976). See also *Carey* v. *Piphus,* 435 U. S. 247, 258 n. 13 (1978). It makes no difference for our purposes which interpretation is the correct one, because Louisiana has a survivorship statute that, under the terms of § 1988, plainly governs this case.

policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law. See, e. g., *Carey* v. *Piphus*, 435 U. S. 247, 254 (1978); *Mitchum* v. *Foster*, 407 U. S. 225, 238–242 (1972); *Monroe* v. *Pape*, 365 U. S. 167, 172–187 (1961). No claim is made here that Louisiana's survivorship laws are in general inconsistent with these policies, and indeed most Louisiana actions survive the plaintiff's death. See La. Code Civ. Proc. Ann., Art. 428 (West 1960); La. Civ. Code Ann., Art. 2315 (West 1971). Moreover, certain types of actions that would abate automatically on the plaintiff's death in many States—for example, actions for defamation and malicious prosecution—would apparently survive in Louisiana.[6] In actions other than those for damage to property, however, Louisiana does not allow the deceased's personal representative to be substituted as plaintiff; rather, the action survives only in favor of a spouse, children, parents, or siblings. See 391 F. Supp., at 1361–1363; La. Civ. Code Ann., Art. 2315 (West 1971); *J. Wilton Jones Co.* v. *Liberty Mutual Ins. Co.*, 248 So. 2d 878 (La. App. 1970 and 1971) (en banc).[7] But surely few persons are not

---

[6] An action for defamation abates on the plaintiff's death in the vast majority of States, see W. Prosser, Law of Torts 900–901 (4th ed. 1971), and a large number of States also provide for abatement of malicious prosecution actions, see, e. g., *Dean* v. *Shirer*, 547 F. 2d 227, 229–230 (CA4 1976) (South Carolina law); *Hall* v. *Wooten*, 506 F. 2d 564, 569 (CA6 1974) (Kentucky law). See also 391 F. Supp., at 1364 n. 17. In Louisiana, an action for defamation or malicious prosecution would apparently survive (assuming that one of the relatives specified in La. Civ. Code Ann., Art. 2315 (West 1971), survives the deceased, as discussed in text *infra*); such an action seems not to fall into the category of "strictly personal" actions, La. Code Civ. Proc. Ann., Art. 428 (West 1960), that automatically abate on the plaintiff's death. See Johnson, Death on the *Callais* Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La. L. Rev. 1, 6 n. 23, 52, and n. 252 (1976). See also Official Revision Comment (c) to La. Code Civ. Proc. Ann., Art. 428.

[7] For those actions that do not abate automatically on the plaintiff's

survived by one of these close relatives, and in any event no contention is made here that Louisiana's decision to restrict certain survivorship rights in this manner is an unreasonable one.[8]

It is therefore difficult to see how any of § 1983's policies would be undermined if Shaw's action were to abate. The goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate.[9] And, given that most Louisiana actions survive the plaintiff's death, the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, at least in situations in which there is no claim that the illegality caused the plaintiff's death. A state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him. In light of this prospect, even an official aware of the intricacies of Louisiana survivorship law would hardly be influenced in his behavior by its provisions.[10]

death, most States apparently allow the personal representative of the deceased to be substituted as plaintiff. See 391 F. Supp., at 1364, and n. 18.

[8] The reasonableness of Louisiana's approach is suggested by the fact that several federal statutes providing for survival take the same approach, limiting survival to specific named relatives. See, e. g., 33 U. S. C. § 908 (d) (1970 ed., Supp. V) (Longshoremen's and Harbor Workers' Compensation Act); 45 U. S. C. § 59 (Federal Employers' Liability Act). The approach taken by federal statutes in other substantive areas cannot, of course, bind a federal court in a § 1983 action, nor does the fact that a state survivorship statute may be reasonable by itself resolve the question whether it is "inconsistent with the Constitution and laws of the United States." 42 U. S. C. § 1988.

[9] This does not, of course, preclude survival of a § 1983 action when such is allowed by state law, see *Moor* v. *County of Alameda,* 411 U. S., at 702–703, n. 14, nor does it preclude recovery by survivors who are suing under § 1983 for injury to their own interests.

[10] In order to find even a marginal influence on behavior as a result of Louisiana's survivorship provisions, one would have to make the rather

It is true that § 1983 provides "a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum* v. *Foster, supra,* at 239. That a federal remedy should be available, however, does not mean that a § 1983 plaintiff (or his representative) must be allowed to continue an action in disregard of the state law to which § 1988 refers us. A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant. But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby. Under the circumstances presented here, the fact that Shaw was not survived by one of several close relatives should not itself be sufficient to cause the Louisiana survivorship provisions to be deemed "inconsistent with the Constitution and laws of the United States." 42 U. S. C. § 1988.[11]

---

farfetched assumptions that a state official had both the desire and the ability deliberately to select as victims only those persons who would die before conclusion of the § 1983 suit (for reasons entirely unconnected with the official illegality) and who would not be survived by any close relatives.

[11] In addition to referring to the policies underlying § 1983, the Court of Appeals based its decision in part on the desirability of uniformity in the application of the civil rights laws and on the fact that the federal courts have allowed survival "in other areas of particular federal concern . . . where statutory guidance on the matter is lacking." 545 F. 2d, at 985; see *supra,* at 588. With regard to the latter point, however, we do not find "statutory guidance . . . lacking"; § 1988 instructs us to turn to state laws, unless an "inconsistency" with federal law is found. While the courts below found such an inconsistency, we do not agree, as discussed

## IV

Our holding today is a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effect on the policies underlying § 1983. A different situation might well be presented, as the District Court noted, if state law "did not provide for survival of any tort actions," 391 F. Supp., at 1363, or if it significantly restricted the types of actions that survive. Cf. *Carey* v. *Piphus*, 435 U. S., at 258 (failure of common law to "recognize an analogous cause of action" is not sufficient reason to deny compensation to § 1983 plaintiff). We intimate no view, moreover, about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death. See *supra*, at 592, and n. 10; cf. *Brazier* v. *Cherry*, 293 F. 2d 401 (CA5 1961) (deceased allegedly beaten to death by policemen; state survival law applied in favor of his widow and estate).

Here it is agreed that Shaw's death was not caused by the deprivation of rights for which he sued under § 1983, and Louisiana law provides for the survival of most tort actions. Respondent's only complaint about Louisiana law is that it would cause Shaw's action to abate. We conclude that the

---

in text *supra*, and hence the survivorship rules in areas where the courts are free to develop federal common law—without first referring to state law and finding an inconsistency—can have no bearing on our decision here. Similarly, whatever the value of nationwide uniformity in areas of civil rights enforcement where Congress has not spoken, in the areas to which § 1988 is applicable Congress has provided direction, indicating that state law will often provide the content of the federal remedial rule. This statutory reliance on state law obviously means that there will not be nationwide uniformity on these issues.

mere fact of abatement of a particular lawsuit is not sufficient ground to declare state law "inconsistent" with federal law.

Accordingly, the judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE BRENNAN and MR. JUSTICE WHITE join, dissenting.

It is disturbing to see the Court, in this decision, although almost apologetically self-described as "a narrow one," *ante,* at 594, cut back on what is acknowledged, *ante,* at 590, to be the "broad sweep" of 42 U. S. C. § 1983. Accordingly, I dissent.

I do not read the emphasis of § 1988, as the Court does, *ante,* at 585 and 593–594, n. 11, to the effect that the Federal District Court "was required to adopt" the Louisiana statute, and was free to look to federal common law only as a secondary matter. It seems to me that this places the cart before the horse. Section 1988 requires the utilization of federal law ("shall be exercised and enforced in conformity with the laws of the United States"). It authorizes resort to the state statute only if the federal laws "are not adapted to the object" of "protection of all persons in the United States in their civil rights, and for their vindication" or are "deficient in the provisions necessary to furnish suitable remedies and punish offenses against law." Even then, state statutes are an alternative source of law only if "not inconsistent with the Constitution and laws of the United States." Surely, federal law is the rule and not the exception.

Accepting this as the proper starting point, it necessarily follows, it seems to me, that the judgment of the Court of Appeals must be affirmed, not reversed. To be sure, survivorship of a civil rights action under § 1983 upon the death of either party is not specifically covered by the federal statute. But that does not mean that "the laws of the United States" are not "suitable" or are "not adapted to the object" or are "deficient in the provisions necessary." The federal law and

the underlying federal policy stand bright and clear. And in the light of that brightness and of that clarity, I see no need to resort to the myriad of state rules governing the survival of state actions.

First. In *Sullivan* v. *Little Hunting Park, Inc.*, 396 U. S. 229 (1969), a case that concerned the availability of compensatory damages for a violation of § 1982, a remedial question, as here, not governed explicitly by any federal statute other than § 1988, Mr. Justice Douglas, writing for the Court, painted with a broad brush the scope of the federal court's choice-of-law authority:

> "[A]s we read § 1988, . . . both federal and state rules on damages may be utilized, *whichever better serves the policies expressed in the federal statutes. . . .* The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired." 396 U. S., at 240 (emphasis added).

The Court's present reading of § 1988 seems to me to be hyperlogical and sadly out of line with the precept set forth in that quoted material. The statute was intended to give courts flexibility to shape their procedures and remedies in accord with the underlying policies of the Civil Rights Acts, choosing whichever rule *"better* serves" those policies (emphasis added). I do not understand the Court to deny a federal court's authority under § 1988 to reject state law when to apply it seriously undermines substantial federal concerns. But I do not accept the Court's apparent conclusion that, absent such an extreme inconsistency, § 1988 restricts courts to state law on matters of procedure and remedy. That conclusion too often would interfere with the efficient redress of constitutional rights.

Second. The Court's reading of § 1988 cannot easily be squared with its treatment of the problems of immunity and damages under the Civil Rights Acts. Only this Term, in

*Carey* v. *Piphus,* 435 U. S. 247 (1978), the Court set a rule for the award of damages under § 1983 for deprivation of procedural due process by resort to "federal common law." Though the case arose from Illinois, the Court did not feel compelled to inquire into Illinois' statutory or decisional law of damages, nor to test that law for possible "inconsistency" with the federal scheme, before embracing a federal common-law rule. Instead, the Court fashioned a federal damages rule, from common-law sources and its view of the type of injury, to govern such cases uniformly State to State. 435 U. S., at 257–259, and n. 13.

Similarly, in constructing immunities under § 1983, the Court has consistently relied on federal common-law rules. As *Carey* v. *Piphus* recognizes, *id.,* at 258 n. 13, in attributing immunity to prosecutors, *Imbler* v. *Pachtman,* 424 U. S. 409, 417–419 (1976); to judges, *Pierson* v. *Ray,* 386 U. S. 547, 554–555 (1967); and to other officials, matters on which the language of § 1983 is silent, we have not felt bound by the tort immunities recognized in the particular forum State and, only after finding an "inconsistency" with federal standards, then considered a uniform federal rule. Instead, the immunities have been fashioned in light of historic common-law concerns and the policies of the Civil Rights Acts.[1]

Third. A flexible reading of § 1988, permitting resort to a federal rule of survival because it "better serves" the policies of the Civil Rights Acts, would be consistent with the methodology employed in the other major choice-of-law provision in the federal structure, namely, the Rules of Decision Act. 28

---

[1] *Moor* v. *County of Alameda,* 411 U. S. 693 (1973), is not to the contrary. There, the Court held that § 1988 does not permit the importation from state law of a new cause of action. In passing dictum, 411 U. S., at 702 n. 14, the Court noted the approach taken to the survival problem by several lower federal courts. In those cases, because the applicable state statute permitted survival, the lower courts had little occasion to consider the need for a uniform federal rule.

U. S. C. § 1652.[2]   That Act provides that state law is to govern
a civil trial in a federal court "except where the Constitution
or treaties of the United States or Acts of Congress otherwise
require or provide."   The exception has not been interpreted
in a crabbed or wooden fashion, but, instead, has been used to
give expression to important federal interests.   Thus, for ex-
ample, the exception has been used to apply a federal common
law of labor contracts in suits under § 301 (a) of the Labor
Management Relations Act, 1947, 29 U. S. C. § 185 (a),
*Textile Workers* v. *Lincoln Mills,* 353 U. S. 448 (1957);
to apply federal common law to transactions in commercial
paper issued by the United States where the United States is
a party, *Clearfield Trust Co.* v. *United States,* 318 U. S. 363
(1943); and to avoid application of governing state law to the
reservation of mineral rights in a land acquisition agreement
to which the United States was a party and that bore heavily
upon a federal wildlife regulatory program, *United States* v.
*Little Lake Misere Land Co.,* 412 U. S. 580 (1973).   See also
*Auto Workers* v. *Hoosier Cardinal Corp.,* 383 U. S. 696, 709
(1966): "[S]tate law is applied [under the Rules of Decision
Act] only because it supplements and fulfills federal policy,
and the ultimate question is what federal policy requires."
(WHITE, J., dissenting.)

Just as the Rules of Decision Act cases disregard state law
where there is conflict with federal *policy,* even though no
explicit conflict with the terms of a federal statute, so, too,
state remedial and procedural law must be disregarded under
§ 1988 where that law fails to give adequate expression to
important federal concerns.   See *Sullivan* v. *Little Hunting
Park, Inc., supra.*   The opponents of the 1866 Act were dis-
tinctly aware that the legislation that became § 1988 would

---

[2] "The laws of the several states, except where the Constitution or
treaties of the United States or Acts of Congress otherwise require or
provide, shall be regarded as rules of decision in civil actions in the courts
of the United States, in cases where they apply."

give the federal courts power to shape federal common-law rules. See, for example, the protesting remarks of Congressman Kerr relative to § 3 of the 1866 Act (which contained the predecessor version of § 1988):

"I might go on and in this manner illustrate the practical working of this extraordinary measure. . . . [T]he authors of this bill feared, very properly too, that the system of laws heretofore administered in the Federal courts might fail to supply any precedent to guide the courts in the enforcement of the strange provisions of this bill, and not to be thwarted by this difficulty, they confer upon the courts the power of judicial legislation, the power to make such other laws as they may think necessary. Such is the practical effect of the last clause of the third section [of § 1988] . . . .

"That is to say, the Federal courts may, in such cases, make such rules and apply such law as they please, and call it *common law*" (emphasis in original). Cong. Globe, 39th Cong., 1st Sess., 1271 (1866).

Fourth. Section 1983's critical concerns are compensation of the victims of unconstitutional action, and deterrence of like misconduct in the future. Any crabbed rule of survivorship obviously interferes directly with the second critical interest and may well interfere with the first.

The unsuitability of Louisiana's law is shown by the very case at hand. It will happen not infrequently that a decedent's only survivor or survivors are nonrelatives or collateral relatives who do not fit within the four named classes of Louisiana statutory survivors. Though the Court surmises, *ante,* at 591–592, that "surely few persons are not survived" by a spouse, children, parents, or siblings, any lawyer who has had experience in estate planning or in probating estates knows that that situation is frequently encountered. The Louisiana survivorship rule applies no matter how malicious or ill-intentioned a defendant's action was. In this case, as

the Court acknowledges, *ante,* at 586 n. 2, the District Court found that defendant Garrison brought state perjury charges against plaintiff Shaw "in bad faith and for purposes of harassment," 328 F. Supp. 390, 400, a finding that the Court of Appeals affirmed as not clearly erroneous. 467 F. 2d 113, 122. The federal interest in specific deterrence, when there was malicious intention to deprive a person of his constitutional rights, is particularly strong, as *Carey* v. *Piphus* intimates, 435 U. S., at 257 n. 11. Insuring a specific deterrent under federal law gains importance from the very premise of the Civil Rights Act that state tort policy often is inadequate to deter violations of the constitutional rights of disfavored groups.

The Louisiana rule requiring abatement appears to apply even where the death was intentional and caused, say, by a beating delivered by a defendant. The Court does not deny this result, merely declaiming, *ante,* at 594, that in such a case it might reconsider the applicability of the Louisiana survivorship statute. But the Court does not explain how either certainty or federalism is served by such a variegated application of the Louisiana statute, nor how an abatement rule would be workable when made to depend on a fact of causation often requiring an entire trial to prove.

It makes no sense to me to make even a passing reference, *ante,* at 592, to behavioral influence. The Court opines that no official aware of the intricacies of Louisiana survivorship law would "be influenced in his behavior by its provisions." But the defendants in Shaw's litigation obviously have been "sweating it out" through the several years of proceedings and litigation in this case. One can imagine the relief occasioned when the realization dawned that Shaw's death might—just might—abate the action. To that extent, the deterrent against behavior such as that attributed to the defendants in this case surely has been lessened.

As to compensation, it is no answer to intimate, as the Court

does, *ante,* at 591–592, that Shaw's particular survivors were not personally injured, for obviously had Shaw been survived by parents or siblings, the cause of action would exist despite the absence in them of so deep and personal an affront, or any at all, as Shaw himself was alleged to have sustained. The Court propounds the unreasoned conclusion, *ibid.,* that the "goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate." But the Court does not purport to explain why it is consistent with the purposes of § 1983 to recognize a derivative or independent interest in a brother or parent, while denying similar interest to a nephew, grandparent, or legatee.

Fifth. The Court regards the Louisiana system's structuring of survivorship rights as not unreasonable. *Ante,* at 592. The observation, of course, is a gratuitous one, for as the Court immediately observes, *id.,* at 592 n. 8, it does not resolve the issue that confronts us here. We are not concerned with the reasonableness of the Louisiana survivorship statute in allocating tort recoveries. We are concerned with its application in the face of a claim of civil rights guaranteed the decedent by federal law. Similarly, the Court's observation that the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. §§ 908 (d), 909 (d) (1970 ed., Supp. V), and Federal Employers' Liability Act, 45 U. S. C. § 59, limit survival to specific named relatives or dependents (albeit a larger class of survivors than the Louisiana statute allows) is gratuitous. Those statutes have as their main purpose loss shifting and compensation, rather than deterrence of unconstitutional conduct. And, although the Court does not mention it, any reference to the survival rule provided in 42 U. S. C. § 1986 governing that statute's principle of vicarious liability, would be off point. There it was the extraordinary character of the liability created by § 1986, of failing to *prevent* wrongful acts, that apparently induced Congress to limit recovery to

widows or next of kin in a specified amount of statutory damages. Cf. Cong. Globe, 42d Cong., 1st Sess., 749–752, 756–763 (1871); *Moor* v. *County of Alameda,* 411 U. S., at 710 n. 26.

The Court acknowledges, *ante,* at 590, "the broad sweep of § 1983," but seeks to justify the application of a rule of nonsurvivorship here because it feels that Louisiana is comparatively generous as to survivorship anyway. This grudging allowance of what the Louisiana statute does not give, just because it gives in part, seems to me to grind adversely against the statute's "broad sweep." Would the Court's decision be otherwise if actions for defamation and malicious prosecution in fact did not survive at all in Louisiana? The Court by omission admits, *ante,* at 591, and n. 6, that that question of survival has not been litigated in Louisiana. See Johnson, Death on the *Callais* Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La. L. Rev. 1, 6 n. 23 (1976). Defamation and malicious prosecution actions wholly abate upon the death of the plaintiff in a large number of States, see *ante,* at 591, and n. 6. Does it make sense to apply a federal rule of survivorship in those States while preserving a different state rule, stingier than the federal rule, in Louisiana?

Sixth. A federal rule of survivorship allows uniformity, and counsel immediately know the answer. Litigants identically aggrieved in their federal civil rights, residing in geographically adjacent States, will not have differing results due to the vagaries of state law. Litigants need not engage in uncertain characterization of a § 1983 action in terms of its nearest tort cousin, a questionable procedure to begin with, since the interests protected by tort law and constitutional law may be quite different. Nor will federal rights depend on the arcane intricacies of state survival law—which differs in Louisiana according to whether the right is "strictly personal," La. Code Civ. Proc. Ann., Art. 428 (West 1960); whether the action concerns property damage, La. Civ. Code Ann., Art. 2315, ¶ 2

(West 1971); or whether it concerns "other damages," *id.*, ¶ 3.  See 37 La. L. Rev., at 52.

The policies favoring so-called "absolute" survivorship, *viz.*, survivorship in favor of a decedent's nonrelated legatees in the absence of familial legatees, are the simple goals of uniformity, deterrence, and perhaps compensation.  A defendant who has violated someone's constitutional rights has no legitimate interest in a windfall release upon the death of the victim.  A plaintiff's interest in certainty, in an equal remedy, and in deterrence supports such an absolute rule.  I regard as unanswered the justifications advanced by the District Court and the Court of Appeals: uniformity of decisions and fulfillment of the great purposes of § 1983.  391 F. Supp., at 1359, 1363–1365; 545 F. 2d, at 983.

Seventh.  Rejecting Louisiana's survivorship limitations does not mean that state procedure and state remedies will cease to serve as important sources of civil rights law.  State law, for instance, may well be a suitable source of statutes of limitation, since that is a rule for which litigants prudently can plan.  Rejecting Louisiana's survivorship limitations means only that state rules are subject to some scrutiny for suitability.  Here the deterrent purpose of § 1983 is disserved by Louisiana's rule of abatement.

It is unfortunate that the Court restricts the reach of § 1983 by today's decision construing § 1988.  Congress now must act again if the gap in remedy is to be filled.