Douglas GATES, etc., Plaintiff,

v.

Michael MONTALBANO, Defendant.

No. 82 C 1269.

United States District Court,
N.D. Illinois, E.D.

Oct. 21, 1982.

Reconsideration Denied Jan. 10, 1983.

Janette C. Wilson, Chicago, Ill., for plaintiff.

William W. Kurnik, Kurnik & Knight, Ltd., Park Ridge, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

City of Dwight Police Officer Michael Montalbano ("Montalbano") has moved to dismiss the civil rights complaint of Douglas Gates ("Administrator Gates"), Administrator of the Estate of Waymon Gates ("Gates"). Administrator Gates sues under 42 U.S.C. §§ 1983 and 1985, claiming Montalbano's fatal shooting of Gates was without probable cause and a violation of Gates's constitutional rights.[1]

Because the shooting occurred in March 1979 and this action was not filed until March 1982, Montalbano seeks dismissal un-der the two-year limitation period of the Illinois Wrongful Death Act, Ill.Rev.Stat. ch. 70, §§ 1–2. This Court established a briefing schedule on Montalbano's motion, to which only Montalbano has adhered, and this District Court's General Rule 13(b) authorizes the Court to proceed on the basis of Montalbano's unilateral submission.[2]

As our Court of Appeals announced in *Beard v. Robinson,* 563 F.2d 331, 334–38 (7th Cir.1977), federal civil rights actions like Gates's (there being no limitation specified within the Civil Rights Acts themselves):

1. survive the death of the injured party;

2. look to Illinois law for the applicable statute of limitations; and

3. come within the catchall five-year limitation period established by Ill.Rev. Stat. ch. 83, § 16, not the two-year limitation for tort actions specified in Ill.Rev. Stat. ch. 83, § 15.

Montalbano claims this case poses an added refinement not dealt with in *Beard*—the effect of the Wrongful Death Act.

*Beard* was startlingly similar to this litigation in both factual and legal terms:

1. It too claimed a fatal shooting by a police officer (though there in alleged conspiracy with FBI agents) in violation of the decedent's constitutional rights.

2. It too involved a suit filed some three years later—outside of two years but within five years of the date the cause of action accrued.

If Montalbano's legal analysis is right (because the Wrongful Death Act establishes a two-year time limit and would also have applied in *Beard*) Beard's administrator could not have sustained her lawsuit. But Montalbano has missed the entire distinction between the survival of the claim of a *decedent* for injuries resulting in death and

---

1. This Court has previously dismissed two originally-named co-defendants: City of Dwight on *Monell* grounds (*Monell v. New York City Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)), and the City's Police Department as not a legal entity capable of being sued.

2. That does not of course mean the matter is treated as equivalent to a default, permitting a decision adverse to Administrator Gates merely because of his delinquency. This Court has reached its own decision based on its independent review of the relevant authorities.

the wrongful death claim of the *decedent's next of kin* (also to be asserted by the personal representative). *Spence v. Staras,* 507 F.2d 554, 558 (7th Cir.1974).[3]

Administrator Gates's Complaint is not entirely clear, and the Court has not had the benefit of his statement of intention because of his delinquency in briefing. But under the liberal construction to be given complaints under *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), Administrator Gates may be viewed as seeking to assert *both* claims (Complaint ¶ 17 alleges Gates survived the fatal shooting for some two hours, so that pre-death personal injury and pain and suffering would certainly be actionable).

■ As for Gates's own claim, Montalbano urges that this Court not follow *Beard's* ruling on the five-year limitation period or this Court's own decision in *Larson v. Wind,* 542 F.Supp. 25 (N.D.Ill.1982) (following and applying *Beard*) as to survival. Those arguments misperceive the nature of the judicial structure, under which this Court is duty-bound to conform to controlling Seventh Circuit law. Thus the Complaint survives Montalbano's motion as to that survived claim.

■ More complications are presented by the Wrongful Death Act claim (if indeed Administrator Gates is making one, as is not entirely clear). Illinois law treats the two-year period under that Act as a *condition* to the right to sue, not simply a statute of limitations. *In re Johns-Manville Asbestosis Cases,* 511 F.Supp. 1235, 1236–37 (N.D. Ill.1981). Thus the basic question Montalbano poses is the extent to which such a state-established condition on access to the courts may properly limit a federally established cause of action.

After *Beard* the United States Supreme Court, in *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978)

upheld a Louisiana statute that caused a Civil Rights Act claim to abate on death, where there was no claim the illegal conduct caused that death.[4] This Court has already rejected Montalbano's invitation to hold Administrator Gates's claim similarly non-survivable. But *Robertson* does teach something about the approach to federal-state law problems in civil rights actions.

Under 42 U.S.C. § 1988, when federal law is "deficient" as to "suitable remedies" in civil rights actions, federal courts are to apply:

> the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of [the] civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States.

And *Robertson* applied that doctrine in this fashion (436 U.S. at 594, 98 S.Ct. at 1997):

> Our holding today is a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effect on the policies underlying § 1983.

Viewed in that way the Illinois Wrongful Death Act appears enforceable here. Certainly Illinois law is not "generally ... inhospitable to survival of § 1983 actions." Nor does application of the Wrongful Death Act have any "independent adverse effect on the policies underlying § 1983." Legitimate distinctions can be made in policy terms between claims of wrongful death and like claims that do not cause death— distinctions rooted in such considerations as the greater difficulty in defending against wrongful death claims, difficulties that may reasonably be considered to increase with time. Such distinctions, viewed by the Illi-

---

**3.** That failure is all the more surprising because Montalbano's Mem. 3 cites *Spence* for directly related legal propositions.

**4.** Compare the Supreme Court's post-*Robertson* decision upholding the survivability of

claims under federal law (in the context of the *Bivens*-type case) in *Carlson v. Green,* 446 U.S. 14, 24–25, 100 S.Ct. 1468, 1474–1475, 64 L.Ed.2d 15 (1980).

nois General Assembly as important enough to justify legislative sanction, are not (in Section 1988 terms) "inconsistent with the Constitution and laws of the United States."

Montalbano says (Mem. 4) the "application of Illinois' Wrongful Death Act was, for some reason, not addressed by the Court in *Beard*." That is no great mystery. *Beard* did not deal with the Wrongful Death Act question because (563 F.2d at 332) "the instant claims survived only insofar as they sought damages for the physical injuries Beard suffered." Thus only survival of Beard's claim, and not any wrongful death claim by his survivors, was involved in that case, and this Court's conclusions on both subjects are wholly consistent with *Beard*.

Because of Administrator Gates's default in meeting his obligations to this Court, it has not had the benefit of testing difficult legal problems in the crucible of the adversary system. Nonetheless it must be concluded (though not without some misgivings) that Montalbano has the better of it on his motion as to the possible Wrongful Death Act claim.

### Conclusion

For the reasons expressed in this memorandum opinion and order, the Complaint is not dismissed as to defendant Montalbano. It will be limited however to the survived claim of Gates himself, not a Wrongful Death Act claim.