Anna **AMBRUSTER**, individually, and on behalf of the General Public, Plaintiff,

v.

**MONUMENT 3: REALTY FUND VIII LTD., et al., Defendants.**

**Civil No. 96–20693 SW.**

United States District Court, N.D. California.

April 3, 1997.

**863**

D. Scott Chang, Belmont, CA, for plaintiff.

Martin M. Eisenberg, Foster City, CA, for defendants.

ORDER GRANTING PLAINTIFF'S MO-
TION FOR LEAVE TO FILE FIRST
AMENDED COMPLAINT SUBSTI-
TUTING SUCCESSORS IN INTER-
EST FOR DECEASED PLAINTIFF

SPENCER WILLIAMS, Senior District Judge.

Plaintiff Anna Ambruster died shortly after filing the Complaint in this action. In this motion, two of Mrs. Ambruster's children seek this Court's permission under Fed. R.Civ.P. 15 and Fed.R.Civ.P. 25(a) to amend the Complaint to substitute themselves as plaintiffs in place of their mother. The parties do not dispute that Ambruster's successors should be allowed to amend the Complaint and substitute themselves as plaintiffs. However, the Defendants raise one significant question concerning the propriety of the substitution: when a plaintiff making a discrimination claim under the federal Fair Housing Act dies, and is succeeded in the suit by his or her successors, does the original plaintiff's claim for emotional distress damages survive? The question presented is one of law, and one of first impression in this Circuit.

## BACKGROUND

Plaintiff alleges the following facts. Anna Ambruster ("Mrs.Ambruster") was a tenant at Heritage Park Apartments, a 508–unit apartment complex in Sunnyvale, Calif. Pat Forward and Christopher Ambruster are two of Mrs. Ambruster's children (together, the "Ambruster children"). Monument 3: Realty Fund VIII Ltd., a California Limited Partnership, owns and operates Heritage Park Apartments ("Heritage").

Mrs. Ambruster was an elderly woman who suffered from asthma and a heart condition. Mrs. Ambruster's sole sources of income were Social Security and Supplemental Security Income. She also received a rental subsidy through the Section 8 Certificate Program under which she paid a portion of her rent directly to Heritage, and the remainder of her rent was paid by the Housing Authority of Santa Clara County.

In June of 1996, she learned she would have to undergo open heart surgery to replace one of the valves in her heart. She was also hospitalized for pneumonia and bronchitis. Mrs. Ambruster contacted the on-site manager of Heritage to request a transfer to a two-bedroom apartment, so that she could accommodate a live-in assistant in light of her increased incapacity. It is alleged that Mrs. Ambruster needed a live-in attendant to administer medications, prepare meals, run errands, and transport her to doctors' appointments, among other things. Mrs. Ambruster's doctors certified that she required a live-in attendant on a long-term basis. Heritage's manager told Mrs. Ambruster that the wait list for a two-bedroom apartment would be five years.

One week later, Mrs. Ambruster wrote a letter to the manager of Heritage again requesting that she be allowed to transfer to a larger apartment to accommodate a live-in attendant. Heritage never responded to this letter.

In about July 1996, Mrs. Ambruster contacted a non-profit legal services office. A representative of that office contacted Heritage on Mrs. Ambruster's behalf and again requested a transfer to a larger apartment.

The property manager, Jim Johnston ("Johnston"), told her that no below-market-rate two-bedroom apartments were available. Another legal aid group also called Johnston to request larger accommodations for Mrs. Ambruster. (Apparently, the County Housing Authority had approved Mrs. Ambruster's request for a certificate for a two-bedroom apartment.) Johnston responded that Heritage did not allow tenants to transfer apartment units. The representative followed up by sending Johnston a letter requesting reasonable accommodation.

On August 20, 1996, Heritage served Mrs. Ambruster with a 30–day notice terminating her tenancy. Mrs. Ambruster's legal representatives requested that Heritage rescind the notice, because Mrs. Ambruster was scheduled to undergo open heart surgery on August 26, 1996, and would require up to a year to fully recuperate.

On August 26, 1996, Mrs. Ambruster filed this lawsuit. The Complaint alleges the Defendants violated the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604(f)(1), 3604(f)(2), 3604(f)(3)(B), 3617; the California Fair Employment and Housing Act, Cal. Gov.Code §§ 12955(a), (d), (f), (g); the California Unruh Civil Rights Act, Cal. Civ.Code § 51 *et seq.;* and California Civil Code § 54.1. The Complaint also contains allegations of negligence and unfair business practices. It seeks the following relief: an injunction; declaratory relief; compensatory, statutory, and punitive damages; treble damages under the Unruh Act and Civ.Code § 54 *et seq.;* treble damages under Civ.Code § 3345; reasonable attorneys' fees and costs. Presumably, the compensatory damages described include damages for the emotional distress alleged in the Complaint.

On August 27, 1996, Defendants rescinded the 30–day notice terminating Mrs. Ambruster's tenancy. On September 4, 1996, while undergoing open heart surgery, Mrs. Ambruster died.

## DISCUSSION

■ Defendants have not yet filed a responsive pleading. Therefore, the Court will permit amendment of the Complaint as a matter of right. Fed.R.Civ.P. 15(a). This does not, however, dispose of the question of substitution of parties under Fed.R.Civ.P. 25(a)(1). The Court may, in its discretion, order substitution of the proper parties if the claim is not extinguished by the original party's death. Fed. R. Civ. P. 25(a)(1); *McKenna v. Pacific Rail Service,* 32 F.3d 820, 836 (3d Cir.1994). As discussed above, the critical question facing the Court at this juncture is whether substitution of the Ambruster children for the deceased Plaintiff extinguishes the claim for emotional distress damages under the federal Fair Housing Act.

The Fair Housing Act and its amendments contain no specific provision explaining whether an individual's right to bring a civil claim is inherited by that person's heirs. To construe civil rights statutes, including the FHA, the Court turns to 42 U.S.C. § 1988. *See Glanz v. Vernick,* 750 F.Supp. 39, 42 (D.Mass.1990). The default rule of § 1988 provides that state law governs issues upon which the federal statute is silent. "When federal law is thus 'deficient,' § 1988 instructs us to turn to the common law, as modified and changed by the constitution and statutes of the [forum] State," as long as not inconsistent with the U.S. Constitution and laws of the United States. *Robertson v. Wegmann,* 436 U.S. 584, 588, 98 S.Ct. 1991, 1993, 56 L.Ed.2d 554 (1978). "[T]o the extent that the application of state law is 'inconsistent' with federal law, § 1988 by its own terms requires the court to disregard it." *Glanz,* 750 F.Supp. at 43.

■ Therefore, the issue of whether Ms. Ambruster's claim for emotional distress damages abates upon her death is resolved according to California law, unless that law conflicts with the federal laws or constitution. California's survivorship statute is found at Cal.Civ.Proc.Code § 377.34. The statute limits recoverable damages to "damages that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to had the decedent lived and do not include damages for pain and suffering." Emotional distress damages are within the definition of pain and suffering damages and do not survive the death of a

decedent under the California survival statute. *Neal v. Farmers Ins. Exchange,* 21 Cal.3d 910, 920 n. 3, 148 Cal.Rptr. 389, 582 P.2d 980 (1978).

Following the *Robertson* analysis, the Court must now decide whether the state-law limitation on the recovery of all emotional distress damages is inconsistent with federal law, in this case, the FHA. 436 U.S. at 588–89, 98 S.Ct. at 1993–94. The Ninth Circuit has expressed no view as to whether the remedies authorized by California's survival statute are too limited to be considered consistent with civil rights laws. *See Smith v. City of Fontana,* 818 F.2d 1411, 1417 n. 8 (9th Cir.1987).

For the reasons set forth below, the Court finds that the California survival statute's limitation on post-mortem emotional distress damages conflicts with the FHA, and that therefore, the Ambruster children's claim for emotional distress damages survives their mother's death.

■ Allowing survival of emotional distress damages furthers the policies underlying the FHA. The federal civil rights laws seek to provide for compensation of victims of housing discrimination and to deter other persons from violating the law. *See Robertson,* 436 U.S. at 590–2, 98 S.Ct. at 1995–6 (Section 1983); *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 357–59, 115 S.Ct. 879, 884–85, 130 L.Ed.2d 852 (Title VII and Age Discrimination in Employment Act). The FHA, at 42 U.S.C. § 3613(c), entitles the original plaintiff in a private action for violation of the provisions of the Act to seek an award of "actual and punitive damages." This includes damages for emotional distress, humiliation, and mental anguish. *Seaton v. Sky Realty Co.,* 491 F.2d 634, 636–37 (7th Cir.1974); *Steele v. Title Realty Co.,* 478 F.2d 380, 384 (10th Cir.1973).

Emotional distress damages often represent a large proportion of the monetary damages available to a FHA plaintiff. Economic damages, such as moving costs and increased rent, usually amount to a small sum. Indeed, housing discrimination has been likened to a "dignitary tort," such as defamation or infliction of emotional distress. *Curtis v. Loether,* 415 U.S. 189, 196 n. 10, 94 S.Ct. 1005, 1009 n. 10, 39 L.Ed.2d 260 (1974). "Although there are many kinds of injuries for which fair housing plaintiffs may receive compensation, the injury for which substantial damages are most frequently awarded is emotional suffering." John Hammell, Housing Discrimination, *in* 9 Civil Rights Litigation and Attorney Fees Annual Handbook, 274 (National Lawyers Guild Civil Liberties Committee, 1993). "Most of the actual damages awarded in Title VIII cases have been to compensate the plaintiff for nonmonetary injuries such as humiliation, embarrassment, and emotional distress." Robert G. Schwemm, Housing Discrimination Law and Litigation § 25.3(2)(b) "Direct Court Actions" at 25–20, 25–20 n. 84 (1996) (citing cases where emotional distress damages constituted majority of award). In the present case, Mrs. Ambruster's attorney has stated that the Plaintiff has no economic damages, as she remained in her apartment and incurred no moving costs or increases in rent.

Exclusion of emotional distress damages upon a plaintiff's death could seriously dilute the potency of an FHA claim made by a terminally ill or elderly plaintiff. Because the litigation process can easily outlast the longevity of such plaintiffs, eliminating emotional distress damages can undermine the value of housing discrimination laws as to those groups. Likewise, their successors will lose a key incentive to enforce their predecessors' rights under the FHA.

Although no federal cases examine the issue of survival of emotional distress damages under the FHA in particular, in other types of civil rights cases, the courts have almost always allowed emotional distress damages to survive the death of the plaintiff. The federal district courts that have examined whether emotional distress damages survive in 42 U.S.C. § 1983 actions have held that the California survival statute which does not provide recovery for emotional distress damages is inconsistent with the goals of § 1983. *Guyton v. Phillips,* 532 F.Supp. 1154, 1166 (N.D.Cal.1981); *Williams v. City of Oakland,* 915 F.Supp. 1074 (N.D.Cal.1996) (plaintiff's heirs could bring emotional distress damages because California survival statute was inconsistent with § 1983 civil rights claim); *see*

*also County of Los Angeles v. Superior Court*, 50 Cal.App.4th 1453, 58 Cal.Rptr.2d 358 (1996).

Defendants argue that because plenty of relief is available to Plaintiff in the form of punitive damages, economic damages and injunctive remedies, the purposes of the Federal Fair Housing Act will be served, despite the lack of emotional distress damages. They contend that economic and punitive damages will compensate the injured party and that injunctive relief will deter future violations.

The availability of punitive damages does not make up for the elimination of emotional distress damages. Punitive damages are only available in a subset of private FHA actions. A plaintiff seeking punitive damages must show the defendants acted wantonly and wilfully, or were motivated in their actions by ill will, malice, or a desire to injure the plaintiffs. *Jeanty v. McKey & Poague, Inc.*, 496 F.2d 1119, 1121 (7th Cir. 1974).

Injunctive and declaratory relief may serve the purpose of deterring future violations, but where an FHA plaintiff has died, would fail to provide any relief directly to the successors who have maintained the original plaintiff's case, thus diminishing their incentive to sustain the discrimination claim. Furthermore, injunctive relief is discretionary with the court, and is not routinely granted in every fair housing case.

Accordingly, the Court holds that under the FHA, a claim for emotional distress damages survives the death of a plaintiff. The inclusion of emotional distress damages furthers the legislative goals of compensating victims and deterring violations.

## CONCLUSION

The motion to substitute successors in interest for the deceased plaintiff is GRANTED. The successors in interest, Pat Forward and Christopher Ambruster, are GRANTED leave to file a First Amended Complaint, as lodged with the Court for the present motion. The First Amended Complaint shall be deemed filed and served on the date of this Order. Defendants shall

plead in response to the First Amended Complaint within twenty (20) days of the date of this Order.

IT IS SO ORDERED.