**James LINZIE, et al., Plaintiffs,**

v.

**CITY OF COLUMBIA, MISSOURI, et al., Defendants.**

No. 86–4347–CV–C–9.

United States District Court, W.D. Missouri, C.D.

Dec. 4, 1986.

Harold L. Whitfield, Alif A. Williams, St. Louis, Mo., for plaintiffs.

Robert B. Best, Jr., Kurt L. Rasmussen, Kathryn M. Coonrod, Kansas City, Mo., for defendants.

David A. Oliver, Columbia, Mo., for France.

Richard C. Thomas, Bear, Hines, Thomas, Dierkes & Stamper, Columbia, Mo., for Branch, Ford, Lebaub and Klemme.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

BARTLETT, District Judge.

Plaintiffs, parents of Kimberly Ann Linzie, seek damages for the alleged deprivation of their constitutional rights as a result of the death of Kimberly Ann Linzie on July 3, 1985, in Columbia, Missouri. James Linzie, as the personal representative of the estate of Kimberly Ann Linzie, also seeks damages for Kimberly Ann's loss of life in alleged violation of her constitutional rights. Defendants raise numerous challenges to the complaint.

### Standard for Ruling Motions to Dismiss

All factual allegations in the complaint are to be taken as true as well as all inferences which may reasonably be drawn from those facts. *Hishon v. King & Spaulding,* 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed for failure to state a claim for relief unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### Issues About Which There is No Dispute

The parties agree about the following:

1) the individual defendants are not liable for actual or punitive damages in their official capacities. Therefore, any claim against the individual defendants in their official capacities will be dismissed;

2) punitive damages are not recoverable against the City under either 42 U.S.C. § 1983 or the Missouri Wrongful Death Statute, Mo.Rev.Stat. §§ 537.080–.100 (Supp.1986). Therefore, any claim for punitive damages asserted by plaintiffs against the City under either § 1983 or the Missouri Wrongful Death Statute will be dismissed;

3) James Linzie, as personal representative of the Estate of Kimberly Ann Linzie, may not maintain an action under the Missouri Wrongful Death Statute because he and Kimberly Ann Linzie's mother, Cathy Linzie, survive. Therefore, any claim as-

serted by James Linzie as personal representative of the Estate of Kimberly Ann Linzie under the Missouri Wrongful Death Statute will be dismissed;

4) any claim Kimberly Ann Linzie may have had for assault and battery under Missouri state law abated on her death;

5) plaintiffs have no claim under § 1983 against the City of Columbia, Missouri, or William Dye, Chief of Police, based on a respondeat superior or vicarious liability theory.

*Under § 1983 a Claim for the Deprivation of Kimberly Ann Linzie's Right to Life and Liberty Secured by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution Survives Her Death*

James Linzie, personal representative of the Estate of Kimberly Ann Linzie, deceased, alleges that the defendants intentionally shot to death Kimberly Ann Linzie in violation of her rights to life and liberty under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Defendants argue this civil rights claim should be dismissed because it did not survive the death of Kimberly Ann Linzie.

█ Federal law is silent on whether a civil rights action under § 1983 survives the death of the victim. *Robertson v. Wegmann*, 436 U.S. 584, 589, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554 (1978). Therefore, pursuant to 42 U.S.C. § 1988, state common law determines whether a civil rights action has survived "subject to the important proviso that state law may not be applied when it is 'inconsistent with the constitution and laws of the United States.'" 436 U.S. at 588–90, 98 S.Ct. at 1994–95 (quoting § 1988).

Under Missouri law, a claim for personal injury that results in death does not survive the death of the injured party. Mo. Rev.Stat. § 537.020; *Damerel v. Sabina Realty Corp.*, 603 S.W.2d 96 (Mo.Ct.App. 1980). However, Missouri provides designated survivors an action for wrongful death. Mo.Rev.Stat. § 537.080. The damages that the designated survivors can claim are set forth in § 537.090. The survivors may not recover for the victim's loss of life. Therefore, if the compensation policy embodied in Missouri's Wrongful Death Statute were to be applied in this case, the personal representative of the Estate of Kimberly Ann Linzie could not claim damages for the loss of Kimberly Ann Linzie's life because that claim did not survive under Missouri law.

█ Is this result inconsistent with the policies intended to be furthered by § 1983? The fundamental policies underlying § 1983 are compensation for persons injured by the deprivation of federal rights and prevention of abuses of power by those acting under color of state law. *Robertson*, 436 U.S. at 590–91, 98 S.Ct. at 1995. "One of the primary reasons Section 1983 was enacted was to remedy and deter racial killing and other acts violative of the Fourteenth Amendment.... The legislative history behind Section 1983 expresses an unequivocal concern for protecting life...." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1239 (7th Cir.1984).

Where killing is the alleged unconstitutional act, the deterrence objective of § 1983 would be thwarted if a civil rights claim under § 1983 claiming damages for loss of life could not be asserted because of the application of Missouri law. *Bell*, 746 F.2d at 1240. In *Bell*, the Court determined that because the Wisconsin wrongful death law denied recovery for loss of life, Wisconsin law was inconsistent "with the deterrent policy of Section 1983 and the Fourteenth Amendment's protection of life." *Id.*

But since in the instant case the killing is the unconstitutional act, there would result more than a marginal loss of influence on potentially unconstitutional actors and therefore on the ability of Section 1983 to deter official lawlessness if the victim's estate could not bring suit to recover for loss of life. Moreover, if Section 1983 did not allow recovery for loss of life notwithstanding inhospitable

state law, deterrence would be further subverted since it would be more advantageous to the unlawful actor to kill rather than injure.

*Id.* at 1239 [footnotes omitted].

Furthermore, although the survivors designated in Missouri's Wrongful Death Statute may claim a broad range of damages suffered by them as a result of the death, including loss of consortium and companionship, and may present evidence of aggravating circumstances, the survivors may not submit to the jury a separate claim for punitive damages. *Sunshine Realty Corp. v. Killian,* 702 S.W.2d 95, 104 (Mo. Ct.App.1985). In fact, giving an instruction that separately submits for the jury's consideration the question of aggravating circumstances defined in terms similar to punitive damages is reversible error. *Id.*

 Missouri's prohibition against a separate claim for punitive damages would subvert both the compensation and deterrence policies underlying § 1983. *Bell,* 746 F.2d at 1241; *McFadden v. Sanchez,* 710 F.2d 907, 911 (2d Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983).

For the foregoing reasons, Missouri law is inconsistent with federal law insofar as it precludes recovery for loss of life and punitive damages under the circumstances alleged in this complaint. Therefore, Missouri law cannot be applied to preclude the survival of a § 1983 action seeking actual and punitive damages for Kimberly Ann Linzie's loss of life.

*James Linzie, Personal Representative of the Estate of Kimberly Ann Linzie, Deceased, Has Standing to Assert a § 1983 Claim for Kimberly Ann Linzie's Loss of Life*

Section 1983 does not state who has standing to bring a civil rights action where the victim is deceased. Therefore, pursuant to § 1988, reference must be made to Missouri state law to ascertain whether the personal representative of the estate of the deceased has standing to prosecute a § 1983 action. *Landrum v. Moats,*

576 F.2d 1320, 1323 n. 2 (8th Cir.), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978); *see also Archer v. Preisser,* 723 F.2d 639, 639–40 (8th Cir. 1983).

There is no Missouri statute stating who has standing to bring an action for loss of life of the victim because, as previously discussed, under Missouri law, any such claim abates at the time of death. Plaintiffs argue that the statute providing that the personal representative has standing to bring claims which survive death on behalf of the decedent is the most analagous state standing provision. Defendants argue that the most analagous state standing provision is the Missouri Wrongful Death Statute because it designates the survivors who may claim damages upon death.

Certainly the father and mother of the deceased have standing to bring a wrongful death action under § 537.080. However, the damages that they may claim are primarily damages that they suffered directly. (The only exception is that "in addition, the trier of facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued." Mo.Rev.Stat. § 537.090.)

In the instant case, the damage claim for Kimberly Ann Linzie's loss of life would not be for damages suffered directly by the plaintiff. The plaintiff, as personal representative of Kimberly Ann Linzie's estate, would be asserting a claim for damages suffered by the deceased herself.

 The personal representative of Kimberly Ann Linzie's estate satisfies the requirements for a party to assert a constitutional claim on behalf of a third party, i.e.: "(1) the party seeking relief must show that he is sufficiently affected by the action he is challenging to justify consideration by the Court of the validity of the action; and (2) the action violates the rights of the particular party who is attacking it

and not of some third party." *Mattis v. Schnarr*, 502 F.2d 588, 593 (8th Cir.1974).

Under Missouri law, "a decedent's estate can act only by and through the decedent's personal representative." *Matter of Estate of Fields*, 588 S.W.2d 50, 51 (Mo.Ct. App.1979). The personal representative stands in the place of the decedent and represents his interests. *See Harris v. Bates*, 364 Mo. 1023, 270 S.W.2d 763, 766 (1954). Therefore, Kimberly Ann Linzie's personal representative stands in place of and represents the interests of Kimberly Ann Linzie.

■ For the reasons stated, James Linzie, personal representative of the Estate of Kimberly Ann Linzie, deceased, has standing to assert a § 1983 claim for the loss of life of Kimberly Ann Linzie.

*The Parents of Kimberly Ann Linzie Have a Constitutional Interest in the Parent/Child Relationship with Kimberly Ann Linzie*

The parents of Kimberly Ann Linzie assert a claim under § 1983 for the deprivation of their right to the relationship between parent and child without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Defendants argue that the parents do not have an interest in the continued society of a child that is protected from state interference by the due process clause of the Fourteenth Amendment.

In *Mattis v. Schnarr*, 502 F.2d 588 (8th Cir.1974), plaintiff sought damages and declaratory relief from defendant police officers as a result of the shooting and killing of plaintiff's son while he was attempting to escape arrest. A critical issue was whether plaintiff had standing to challenge the constitutionality of the Missouri statutes that permitted a law enforcement officer to use deadly force in apprehending a suspected felon. The Court concluded that the father had standing to attack the statute because he alleged that his right to not be deprived of the parent/child relationship without due process of law had been violated by the killing of his son.

The familial relationship between parent and child is fundamental to our civilization. The family is the foundation of society and hence the state. The traditions and common heritage of our people have always stressed the importance of the family bonds.

. . . . .

We believe that 'parenthood is a substantial interest of surpassing value and protected from deprivation without due process of law'—a fundamental legal right. The plaintiff alleges that this fundamental right has been invaded.

*Id.* at 494–95.

■ Defendants argue that *Mattis* applied only to standing to challenge the constitutionality of a statute and not to standing to claim damages for the alleged deprivation of their parental rights. Defendants offer no authority for their position. Neither defendants' unsupported arguments nor the Court's own consideration of the matter reveals any reason why a parent would have a fundamental right in parenthood for the purpose of challenging the constitutionality of a state statute but would not have a fundamental right in parenthood for the purpose of seeking damages for the alleged unlawful deprivation of that right.

Therefore, the defendants' motion to dismiss the § 1983 claim of Kimberly Ann Linzie's parents for the deprivation of their parental rights will be denied.

*Plaintiffs Should File an Amended Complaint*

Defendants assert that plaintiffs should be required to file an amended complaint because the complaint filed on May 28, 1986, does not conform with the requirements of Rule 10(b), Federal Rules of Civil Procedure.

In pertinent part, Rule 10(b) states: "Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separa-

tion facilitates the clear presentation of the matter set forth."

Plaintiffs argue that they have not violated Rule 10(b) because all of their claims are founded upon the same occurrence, i.e., the death of Kimberly Ann Linzie.

■ Plaintiffs' contention is technically correct. However, by including multiple claims in one "count," confusion results. For instance, it is difficult to determine which plaintiffs are asserting which claims against which defendants. If each claim were stated in a separate count, the complaint would be much clearer. Each count should state which plaintiff or plaintiffs is bringing the claim against which defendant or defendants. In addition to clarifying the claims being asserted and the parties to those claims, an amended complaint will afford the plaintiffs an opportunity to delete from their complaint the undisputed matters listed at the beginning of this opinion.

Furthermore, the filing of an amended complaint will afford the plaintiffs an opportunity to consider defendants' arguments that the allegations against the City of Columbia and its police chief should be stated with greater specificity.

Under *Monell v. Department of Social Service,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), a city or its police chief cannot be held liable under § 1983 on a respondeat superior theory. However, a city or its police chief may be held liable for their own violations of the Fourteenth Amendment. *Monell,* 436 U.S. at 692, 98 S.Ct. at 2036. Municipal liability under the *Monell* standards can only arise if a municipal custom or policy is the moving force of the constitutional violation. *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981).

*Monell's* policy or custom requirement at the least "was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decision makers." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2435, 85 L.Ed.2d 791 (1985). In

*Tuttle,* the plurality points out the differences between the type of policy involved in *Monell* and the type of "policy" upon which plaintiffs seek to rely in the instant case. "[T]he word "policy" generally implies a course of action consciously chosen from among various alternatives; ... [and] there must be an affirmative link between the policy and the particular constitutional violation alleged." *Tuttle,* 105 S.Ct. at 2436 [footnotes omitted].

Therefore, the plaintiffs should consider whether they can, under the requirements of Rule 11, Federal Rules of Civil Procedure, identify City policies of the type required by *Monell* and *Tuttle* and allege how those policies resulted in deprivation of plaintiffs' constitutional rights. *See also Batista v. Rodriguez,* 702 F.2d 393, 397–98 (2d Cir.1983).

### Order

For the foregoing reasons, it is hereby ORDERED that:

1) defendants' motion to strike the following is hereby granted:

 a) claims under § 1983 against individual police officers and Chief William Dye in their official capacities;

 b) claims under § 1983 for punitive damages against the City of Columbia, the Joint Communications Center and officials in their official capacities;

 c) claim for punitive damages under the Missouri Wrongful Death Statute;

 d) claim by James Linzie as personal representative of the estate of Kimberly Ann Linzie, under the Missouri Wrongful Death Statute;

 e) claim for assault and battery under Missouri state law; and

 f) claim under § 1983 against the City of Columbia, the Joint Communications Center, or William Dye, Chief of Police, based on a respondeat superior or vicarious liability theory;

2) defendants' motion to dismiss the claim of James Linzie, personal representative of the Estate of Kimberly Ann Linzie, deceased, under 42 U.S.C. § 1983, for deprivation of Kimberly Ann Linzie's life in viola-

tion of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution is hereby denied;

3) defendants' motion to dismiss the claim of James and Cathy Linzie pursuant to 42 U.S.C. § 1983 for deprivation of their parental rights in violation of the Fourteenth Amendment to the United States Constitution is hereby denied;

4) defendants' motion to dismiss plaintiffs' complaint for failure to comply with Rule 10(b), Federal Rules of Civil Procedure, is denied;

5) defendants' motion for a more definite statement is granted;

6) plaintiffs shall file an amended complaint consistent with this Order within fourteen days from the date of this Order;

7) defendants shall file an answer or other responsive pleading to plaintiffs' amended complaint within fourteen days after the date the amended complaint is filed.